Carmen N. SALERNO, Appellant,

v.

The WESTERN CASUALTY & SURETY
COMPANY, a corporation, Appellee.

No. 17559.

United States Court of Appeals
Eighth Circuit.

Aug. 28, 1964.

Rehearing Denied Sept. 21, 1964.

RIDGE, Circuit Judge.

This appeal, duly perfected, presents for review an adjudication made in a declaratory judgment action brought under 28 U.S.C.A. § 2201, ruling that no coverage was afforded appellant under a comprehensive personal liability policy of insurance issued by appellee for personal injuries sustained by one Wallace W. Humes, a jockey, while "ponying" a race horse on appellant's suburban farm.[1] The opinion of the District Court adjudicating that matter is recorded in D.C. 224 F.Supp. at page 584. Since there is no dispute as to the relevant facts existing in the case at bar, and it appears from the record before us that the primary issue here is to be related to the singular proposition, namely, whether appellee, by conduct constituting waiver and estoppel, is precluded under Missouri law from asserting "non-coverage or non-liability" under the policy of insurance in question, we only relate those facts that will bring that issue into proper focus and enlightenment.

Appellee's insurance policy as issued and in force at all times hereinafter mentioned, granted comprehensive personal liability coverage to appellant at his farm residence described as 900 Charbonier Road, St. Louis County, Missouri. The policy specifically excluded coverage for occurrences arising from "business pursuits conducted" on the premises. On March 23, 1959, within the effective term of such policy, Wallace W. Humes, a professional jockey, was injured while on the insured premises. Humes was employed by appellant on a part-time basis to "pony" three race horses on the one-sixth mile track maintained on the insured premises. While engaged in "ponying" one such horse (a stallion) Humes was bitten on the leg by that race horse, resulting in serious personal injuries.

Robert E. Staed, of Kappel & Neill, St. Louis, Mo., John C. Kappel, of Kappel & Neill, St. Louis, Mo., for appellant.

Rene J. Lusser, of Lusser & Lusser, St. Louis, Mo., Rene E. Lusser, of Lusser & Lusser, St. Louis, Mo., for appellee.

Before VOGEL, MATTHES, and ·RIDGE, Circuit Judges.

---

1. "Ponying" is a type of training whereby a jockey, mounted on one horse, leads a race horse around a track at various gaits. There was such a track on appellant's farm, maintained for that purpose.

Wallace W. Humes, the jockey, was joined as a party defendant in this action and filed answer to the petition for declaratory judgment. He did not perfect an appeal from the adverse judgment rendered in this action. Appellant Carmen N. Salerno alone perfected an appeal from such judgment. Hence reference to "appellant" in the singular.

That matter was immediately reported to appellee. Thereafter, one of appellee's adjusters made investigation of that occurrence. On April 1, 1959, after interviewing appellant at his office, the adjuster (who was a lawyer) went to the insured premises, made observation thereof and later took a statement from appellant's wife and appellant's farm manager, and made a written report to appellee. It was then revealed to appellee that Humes was engaged in training a race horse owned by appellant at the time he was injured; that Humes was a professional jockey who had "previously ridden (appellant's) horses" at Cahokia and Fairmount Race Tracks, but on the day of the accident was the first time Humes had worked at (appellant's) farm. At that time, appellee's adjuster raised a question of coverage under appellee's policy as being applicable to Humes' injury. It appeared to him the status of Humes was that of an "independent contractor" and not an "employee" of appellant, and he so stated in his report. "The idea of Dr. Salerno operating a business never entered (his) mind" although it here appears that it was at all times evident that the Charbonier Road premises were the hub of appellant's race horse operations.

On June 22, 1959, Humes instituted suit against appellant, seeking damages for the injuries he sustained. Appellant promptly forwarded those suit papers to appellee, who received the same on June 25, 1959. The petition portion thereof recited, among other things, that Humes, "in keeping with his employment, did, as a *business invitee,* appear at the stables of (Salerno) located at 900 Charbonier Road * * * to exercise and train" the race horses here considered; and Salerno negligently and carelessly turned over to Humes "a high-strung, excitable and dangerous" race horse without warning Humes "of the viciousness and dangerous propensities" thereof, and as a consequence Humes was injured at a time when he was hired to prepare that race horse "for a forthcoming racing season." (Supra, at l. c. 585.) Appellee accepted coverage for that occurrence as being within the terms of its policy and retained counsel to defend that action on behalf of appellant, its named insured. It clearly appears from specific findings made, that appellee took complete control of the defense of the Humes suit, retained counsel to protect the rights of appellant Salerno, and this counsel continued to do all things necessary in defense of that case.

On April 1, 1960, ten months after appellee accepted coverage and had assumed defense of the Humes suit in accordance with the terms of its policy, it had one of its adjusters make a further investigation at a race track in East St. Louis, Illinois. It was then, as appellee states, it first discovered that Salerno's "racing activities were extensive in nature." As a consequence, appellee, on April 6, 1960, filed a declaratory judgment action in a State court of Missouri, for the purpose of ascertaining whether appellant "Salerno was covered under the policy issued to him (and) in regard to the lawsuit filed by . . . Humes against Salerno." Appellee alleged in the complaint so filed "that it had ascertained that the insured, defendant Salerno, was operating a racing horse farm and that he was engaged in the business of buying, selling, raising and racing horses for profit and that under the provisions of (its) policy of insurance, such business pursuits of Salerno were specifically excluded." (224 F.Supp. at l. c. 586.)

On April 7, 1960, subsequent to the filing of the declaratory judgment action, appellee wrote a letter to appellant in which it stated that a serious question had arisen as to coverage existing under its policy; and that it would only continue with defense of the Humes case "under an express reservation of rights" as therein set forth. Appellant, through his personal attorney, rejected any such reservation of rights by appellee. Following that rejection, counsel retained by appellee to defend the Humes action attempted to withdraw therefrom, but "the Circuit Court of St. Louis County, Missouri, refused to allow such with-

drawal." Thereafter, retained counsel participated in the trial of the Humes suit which resulted in a verdict and judgment against appellant for $32,000.00. Thereafter, they perfected an appeal to the Supreme Court of Missouri, where the judgment was, on December 28, 1961, affirmed on condition of a remittitur. As a consequence, the final judgment as entered in the case of Humes v. Salerno was in the amount of $23,500.00.

It was thereafter, on April 17, 1962, that the original declaratory judgment action commenced by appellee in the State court, *ante*, was dismissed, without prejudice. Prior thereto, a similar declaratory judgment action had been commenced by appellee in the United States District Court for the Eastern District of Missouri, on November 29, 1961, and that case was dismissed on April 20, 1962. The instant declaratory judgment action was filed in the court below on April 23, 1962. After trial on its merits, District Judge Meredith incorporated his findings of fact and conclusions of law in his opinion, supra. Two aspects of that opinion should here be noted: (1) District Judge Meredith found: "It is evident (in this case) that the Charbonier Road premises were the hub of (appellant's) racing operations and that the race horse operation was a business pursuit"; and, (2) that it is solely on the premise of such findings that it was ruled in the case at bar that " * * * Salerno was engaged in a business at his residence * * * " and as a consequence liability for the Humes incident was ruled as being "excluded by the terms of the policy" in suit. No contention is made that there was not ample evidence adduced to support the factual matter found to exist in the above-stated propositions. It was appellant's contention in the court below, as it is here, that regardless of the finding as to "business activities" made in this case, appellee, under the undisputed facts, waived any right it might have had to claim "non-coverage" and is now estopped to claim "non-liability" under the policy of insurance here in suit, by applicable Missouri law.

Such is the "major legal question" presented in this appeal and aptly recognized by District Judge Meredith as being a "close one" under Missouri law.

In the course of his opinion supra, Judge Meredith stated:

"From our case study of Missouri law, we have concluded that plaintiff's (appellee's) categorical proposition that waiver or estoppel can never be extended to broaden coverage (of an insurance policy) cannot be sustained. While plaintiff (appellee) has cited a number of cases from other jurisdictions, we are here concerned with the law of Missouri to which our discussion accordingly will be confined." (Supra, l. c. 588. Pars. added.)

After reviewing applicable Missouri case law as to waiver and estoppel, it was his conclusion:

"From these cases we have determined that under Missouri law when all the elements of estoppel are present, it may be used to extend or broaden the coverage afforded to the named insured." (Supra, l. c. 590.)

We deem the above general statements to be proper concepts of applicable Missouri law to the facts here; for it has long been the case law of that State that where an insurer:

" * * * instead of relying upon (its) right (to reject for non-coverage) when (a) claim (is) first brought to (its) attention, (it), without due investigation, assumes (itself) to be liable, (therefor and) sets the assured aside and claims the right of control of the defense, (it) cannot afterwards ignore the right the assured has acquired by reason of such action merely because (it) has made a belated discovery of fact, or law, which (it) thinks puts the case outside the terms of (its) policy." (Pars. added.) Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo.App. 327, 133 S.W. 664, at l. c. 666 (1911).

See also, cases cited in District Court's opinion, supra, at l. c. 589–590; and Schmidt v. National Auto & Cas. Ins. Co., 207 F.2d 301 (8 Cir. 1953); Cannon v. Travelers Indemnity Co., 314 F.2d 657 (8 Cir. 1963); Western Casualty and Surety Co. v. Herman, 318 F.2d 50 (8 Cir. 1963). Though appellee contended otherwise in the court below, i. e. that coverage under Missouri law could not be established by estoppel it has now changed its position before us, because it merely asserts that the judgment in the case at bar should be affirmed because appellant failed to carry the burden of proof imposed upon him as required by Missouri law, "to prove each and every element of 'estoppel' " as established in Taylor v. Farmers Bank of Chariton County, 135 S.W.2d 1108 (Mo.App.1940); and United Finance Plan v. Parkview Drugs, Inc., 250 S.W.2d 181 (Mo.App. 1952).

■ In the light of the foregoing, we accept the undisputed, positive statements of applicable Missouri case law relating to the issue of "coverage" as found and declared by District Judge Meredith, *ante*. Hence, all we need be concerned with in this appeal is whether the undisputed facts as found in the case at bar have been properly applied to the issue of estoppel, considered from the standpoint of whether the proof as here made reveals that appellee, with knowledge of all relevant facts, accepted defense of the Humes action, without reservation of rights, at a time when it knew or should have known facts which would have permitted it to deny coverage, but failed to do so and went ahead and investigated such claim and undertook the defense thereof. That such matter presents a question of applicable State law arising in this diversity action in relation to uncontroverted facts, as to which we have the duty to determine a proper application thereof the same as does the District Court, is readily apparent and need not be fortified by cited authorities.

From the foregoing, we think the first matter to be considered in this appeal is that Judge Meredith, in the course of his opinion, at l. c. 591 of 224 F.Supp., found the facts to be and reasoned therefrom as follows:

" * * * (Appellee) within days after the report of the accident knew or should have known the horse involved was a race horse. Certainly such was known from the first petition. In September of 1959, five months after the accident, (appellee) knew or should have known that (appellant) Salerno maintained from twelve to twenty-two race horses on his premises and that race horses were raised and bred there. Further, at approximately this same time (appellee) knew or should have known that the horses were raced for purses at Fairmount and Cahokia. These facts were not concealed by (appellant) Salerno. While we cannot condone *(appellee's) long delay* in attempting to reserve its rights and withdraw from the case, and while it was under a duty to make a reasonable determination of its position based on the facts that it knew or should have known, still the (appellee) had a right to rely on (appellant) Salerno's declaration in the policy that no business pursuits were conducted on his premises and in view of that declaration, (appellee) might reasonably assume from the fact within its knowledge that the horse racing operation was a *hobby* rather than a business pursuit.

"There was at least *one key fact*, unknown to (appellee), known to the (appellant) Salerno and not disclosed by him. In his income tax report (appellant) Salerno treated the farm and racing stables as a business operation. We, therefore, have concluded that (appellant) Salerno has failed to prove the essential elements of estoppel (in the case at bar)." (Emp. & pars. added.)

However, Judge Meredith:

" * * * concluded that the facts known or that should have been

known by the (appellee) regarding the horse racing operation *between the time of the assumption of the defense and its attempted reservation of rights and attempted withdrawal* from the state court action were better and more accurately known by (appellant) Salerno (than by appellee)." (Emp. & pars. added.)

 In the light of the foregoing, it clearly appears that the issue of "estoppel" as ruled in the case at bar has been measured by appellee and the court below from a standpoint of timing of knowledgeable facts. This is to say, that after appellee determined that "Salerno was a (bigger) operator" in the horse racing business than it *first* determined, it had been permitted to deny coverage under the policy in suit, after it first accepted and acknowledged coverage under its policy. We do not believe the issue of "estoppel" here presented can be adjudicated from that vista under Missouri case law; because a "waiver of noncoverage, once effected, is irrevocable" under the law of that State. Cf. Consolidated Elec. Corp. v. Employers Mutual Liability Ins. Co. (D.C.Mo.1952) 106 F.Supp. 322. Particularly is that so where it is conceded that no facts in relation to conditions existing on the insured premises were at any time "concealed" from knowledge by the appellant. Schmidt v. National Auto & Cas. Ins. Co., supra. That appellee did voluntarily assume full control of the defense of the Humes action with actual knowledge of "racing activities" as they existed on the insured premises, is not here left in doubt. Having accepted liability therefor as being within the coverage afforded by its policy, appellee was quite correct in viewing that situation as giving it no choice but to proceed with the trial of the Humes case in the State court, as it did. It is accepting the defense of an action with knowledge of facts which should make an insurer aware that noncoverage exists, "without a non-waiver or reservation of rights agreements that precludes (it) from subsequently setting up (that) fact (as a) defense" under the

facts here considered. Missouri Managerial Corp. v. Pasqualino, Mo.App., 323 S.W.2d, l. c. 250.

 In the case at bar, under facts as found by the trial court, we think the only conclusion to be reached is that appellee, within five days after the Humes occurrence, had equal knowledge and means of knowing the full extent of the "horse racing activities" as conducted on the insured premises as did appellant, and under such circumstances accepted coverage under the policy of insurance in suit. That being so, appellee had no right to know whether appellant was a bigger operator than it first thought, or whether he was making a profit or loss from the business venture of which it admittedly had knowledge. "Business pursuits" as used in the policy here considered is a very comprehensive term. It can only be construed as embracing everything about which a person may be engaged where profit is a motive. That racing and breeding horses is generally recognized to be an enterprise conducted for profit, has long been recognized. Cf. Wilson v. Eisner, 282 F. 38 (2 Cir. 1922). The number of horses revealed in the income tax returns of appellant, the places where they were raced, and that jockeys were used in the business venture conducted by appellant on his farm, were facts made known to appellant's adjuster when he first visited appellant's farm, took statements from appellant, his wife, and from the groom in charge of appellant's horses; and the over-all situation then existing on the appellant's farm. Under applicable Missouri law, once such facts were revealed and recognized by appellee as existing on the insured premises and it accepted coverage therefor under its policy of insurance as issued, it is inconsistent conduct for it to thereafter claim non-coverage and non-liability therefor; and the District Court erred in ruling otherwise. Wolters v. Prudential Insurance Company of America, 296 F.2d 140, l. c. 143 (8 Cir. 1961), and cases there cited.

 The District Court's ruling in the case at bar that appellee was not estopped

to disclaim liability under the circumstances as it did, because appellant failed to make proof and establish elements (2) and (3) relating to estoppel as defined in the case law of Missouri in Taylor v. Farmers Bank of Chariton County, supra,[2] is, as we view the record before us, an inadvertent misconception of applicable law to the facts here established. As to element (2), *infra*, the Court found that sufficient facts were known by appellee, (at least from the time of accepting coverage as to the facts revealed by the complaint filed in the Humes action) to place it on notice that the activities carried on at appellant's premises were more than a "hobby" as appellee first thought. There is no evidence in the record before us that appellant ever contended that his "racing activities" so conducted were a hobby. Seemingly, it was because the District Court considered the "fact of profit" was better known to appellant than to appellee, that the latter might have been led to consider appellant's "racing activities" were a hobby and therefore was entitled to rely on appellant's declaration contained in its policy that no business activities were conducted on the premises. It ·must be remembered, no question of misrepresentation is asserted in this case. Also, that the fact of "profit" relied on by appellee as to its claim of "non-coverage" only came into this case sometime *after* appellee admittedly was apprised of all the "racing activities" and other conditions existing at the "insured premises." Thus the conduct and knowledge of appellee in assuming defense of the Humes claim cannot be measured solely in the light of declarations contained in policy

of insurance as was done here. The original acceptance of coverage must be viewed in the light of knowledge appellee had of the true situation giving rise to Humes' claim, as to which appellee was admittedly fully informed, when it accepted coverage and not "because (it) has made a belated discovery of fact, or law, which (it) thinks puts the case outside the terms of (its) policy." Fairbanks Canning Co. v. London Guaranty & Accident Co., supra, l. c. 666.

As to the third element in footnote 2, *infra*, namely, the truth of the facts must be unknown to appellee, was not treated separately ·by Judge Meredith. Seemingly, he based his conclusion as to that element on reasoning that "racing activities" carried on at the insured premises were fully known to appellee, but not the "extent" as to the fact of "profit or loss" accruing therefrom. The "facts" giving rise to the estoppel here considered consisted of conduct on the part of appellee in assuming control of the defense of the Humes suit, with presumptive knowledge of grounds for declaring non-coverage and maintaining such control for several months thereafter, without declaring any reservation of rights. Appellant had nothing on which to rely other than such conduct on the part of appellee, and cannot be held to have known that appellee had any intention to carry on the defense of the Humes suit with any reservation of rights. Hence the estoppel here arises from the conduct of the appellee, and not from the prior conduct of appellant in carrying on a "racing enterprise" (a business type of operation) on the insured premises. "The loss of a right to con-

2. In Taylor v. Farmers Bank of Chariton County, 135 S.W.2d 1108, the six elements of estoppel are: (1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse.

trol and manage one's own case is itself a (the) prejudice" which must be considered under the facts here. (Fairbanks Canning Co. v. London Guaranty & Accident Co., supra.)

Appellant seeks upon remand of this case that we direct the District Court to make an allowance for the reasonable attorney's fees incurred by him, as considered in Security Insurance Company of New Haven v. White, 236 F.2d 215 (10 Cir. 1956). In the answer and cross-petition filed by appellant, he prayed, among other things, that a declaration be made that under the policy of insurance here considered, "there was coverage provided * * * for the claims and judgment rendered in the suit of Humes v. Salerno"; that the Court declare appellee "bear full responsibility for the payment of the judgment" rendered in that action; and that appellant recover his costs, "together with reasonable attorneys' fees" as provided by § 375.420 V.A. M.S. Since the District Court determined the issue of liability against appellant's contention, it did not reach, or make, any adjudication in respect to the issue of attorneys' fees.

"The Federal Declaratory Judgment Act contemplates that all necessary and proper relief based upon a declaratory judgment should be granted." National Fire Insurance Co. v. Board of Public Instruction, 239 F.2d 370 (5 Cir. 1956). We have heretofore ruled that upon proper finding of fact being made, in an action such as the case at bar, the penalty imposed, by Missouri statute, for vexatious refusal to pay an insured loss might be assessed. (Cf. Firemen's Insurance Company of Newark, N. J. v. Smith, et al., 83 F.Supp. 668 (D.C.Mo. 1949), aff'd 180 F.2d 371 (8 Cir. 1950); cert. den. 339 U.S. 980, 70 S.Ct. 1028, 94 L.Ed. 1384. However, this Court cannot make any determination in respect to that issue in the first instance. Upon remand of this case, that issue is left open for consideration and determination by the District Court, in accordance with applicable Missouri law.

Reversed and remanded.