The WESTERN CASUALTY & SURETY COMPANY, Appellant,

v.

The CITY OF FRANKFORT, Appellee.

Court of Appeals of Kentucky.

Dec. 6, 1974.

Rudy Yessin, Frankfort, for appellant.

Allen Prewitt, Jr., Frankfort, for appellee.

CULLEN, Commissioner.

Pansy Thompson recovered judgment for $8,938 against the City of Frankfort, on a "reverse-condemnation" theory, for damages to her land arising out of the operation by the city of a garbage and trash dump on a tract adjoining Pansy's farm. Trash was so dumped and piled on the city's tract that it spilled over onto Pansy's land, and the encroaching acts continued over a substantial period of time despite repeated complaints by Pansy. The judgment in favor of Pansy was appealed to this court and was affirmed in City of Frankfort v. Thompson, Ky., 483 S.W.2d 446.

The appeal now before us is from a judgment in favor of the city, against The Western Casualty & Surety Company, for the amount of Pansy's judgment, plus the expense incurred by the city in taking the appeal from that judgment. The instant judgment was by way of recovery on a liability insurance policy which Western Cas-

ualty had issued to the city, insuring against liability of the city to other persons for "property damage caused by accident." In rendering the judgment, the circuit court held that not only did the continuing encroachment on Pansy's land constitute an "accident" within the meaning of the insurance policy, but that the insurance company was estopped, by reason of having taken charge of the city's defense in Pansy's action against the city, from denying coverage under the policy. On this appeal Western Casualty contends that the circuit court was in error in both holdings. We agree.

The facts in this action were stipulated by the parties as follows:

"During the entire period of time that the insurance contracts referred to in the plaintiff's complaint were in full force and effect, plaintiff used the site in question as a city dump for the purpose of receiving refuse, debris, and other matters; and the plaintiff did knowingly and continuously during the period of time in question and the period of time that the insurance contracts were in full force and effect utilize said dump in such a manner that as a natural and ordinary consequence thereof debris and refuse was pushed upon, spilled upon, flowed upon, and trespassed upon the property of Mrs. R. A. Thompson."

The first question we consider is whether the events as stipulated constituted an "accident" within the meaning of the insurance policy. The only case relied on by the city as supporting the proposition that there was an "accident" is The Travelers v. Humming Bird Coal Company, Ky., 371 S.W.2d 35. There, a spoil bank from a strip-and-auger-mining operation, after work in creating the bank had ceased, slid down a mountain side onto the lands of the plaintiff. This court held that this constituted an "accident" within the meaning of an insurance policy issued to the mining company. However, in so holding the court found that the sliding of the spoil

bank fitted the following definition of an "accident:"

"any happening resulting in injury * * * which is undesigned and unintended and not foreseeable as the natural and probable consequence of the initiating act. * * *"

In the instant case, the encroachment can in no way be characterized as undesigned, unintentional or not foreseeable. Under the facts as stipulated the city employes knowingly and continuously over a substantial period of time so used the dump that as a natural and ordinary consequence debris and refuse were *pushed upon*, spilled upon, flowed upon, and trespassed upon Pansy's land.

We hold that there was no "accident" within the meaning of the insurance policy in question.

The holding by the circuit court that Western Casualty was estopped to deny coverage was predicated on the fact that the company filed an answer for the city, in Pansy's suit, before notifying the city that the defense of Pansy's suit would be made under a reservation of the right to deny insurance coverage. The facts relevant to the question of estoppel are that Pansy sued the city on October 7, 1968. The city promptly notified Western Casualty of the suit. On October 23, 1968, Western Casualty filed an answer on behalf of the city. Eight days later, on October 31, Western Casualty notified the city that the company would defend the city under a reservation of the right to disclaim coverage, and would submit to the city a nonwaiver agreement to that effect. On November 23 the city and Western Casualty signed a nonwaiver agreement. Thereafter Western Casualty continued with the defense of the suit, to final judgment.

The only case relied on by the city to support the holding of estoppel is American Cas. Co. of Reading, Pa. v. Shely, 314 Ky. 80, 234 S.W.2d 303. There, the insur-

ance company proceeded with the defense of the suit against the insured for almost a *year* before notifying the insured of a reservation of the right to disclaim coverage. The basis for the holding of estoppel was that the company, after assuming *control* of the defense of the suit for a prolonged period, had deprived the insured of the opportunity of managing its own defense, to its manifest *prejudice*. We think the facts of the instant case are not comparable. Here, the initial act of the insurance company in simply filing an answer did not deprive the city of any substantial right to manage the defense of the suit. The main course of the suit occurred after the non-waiver agreement was executed.

The judgment is reversed, with directions to enter judgment dismissing the complaint.

All concur.