**CITY OF CARTER LAKE, a Municipal Corporation in the State of Iowa, Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, a corporation, Defendant.**

Civ. No. 76–0–484.

United States District Court, D. Nebraska.

Aug. 2, 1978.

William Brennan, Fitzgerald, Brown, Leahy, Strom, Schorr & Marmettler, Omaha, Neb., for plaintiff.

John R. Douglas, Cassem, Tierney, Adams & Gotch, Omaha, Neb., for defendant.

SCHATZ, District Judge.

In this litigation, the plaintiff, City of Carter Lake, Iowa, has alleged that its liability insurance policy with the defendant, Aetna Casualty and Surety Company (here-

inafter Aetna), a Connecticut corporation, covers the negligent actions of Carter Lake's personnel which resulted in six separate incidents of sewage backup into the basement of a Carter Lake resident. Aetna argues that while the first incident may have been an "accident" or "occurrence" within the meaning of the insurance policy, the five subsequent incidents were not covered by the policy. This court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.

The facts are these. On February 26, 1975, the basement of one William Mecseji's house was flooded with raw sewage. The sewage pump had overloaded and had shut off. The sewage began to back up into the system and flooded the lowest area in the drainage system in the Carter Lake area, which happened to be the Mecseji basement. The city maintenance personnel reset the pump and the basement began to drain. Mr. Mecseji filed a claim against the City for his damages in the amount of $418.12. The City referred this claim to Aetna who initially denied the claim on the basis that the City was not negligent.

Due to repeated, identical failures of the sewage pump, the Mecseji basement was flooded again on July 14, 1975, August 2, 1975, and August 21, 1975. The Mecsejis filed suit against Carter Lake on August 26, 1975 alleging that the damage to their property was the result of Carter Lake's negligence. Their complaint was subsequently amended in January, 1976, to include two additional incidents of flooding on December 16, 1975, and December 18, 1975, again due to failure of the sewage pump. By letter of February 26, 1976, Aetna notified Carter Lake that it would defend the City in the lawsuit but that Aetna would not pay for any damages incurred subsequent to the first flooding, February 26, 1975. The City hired additional counsel for the trial and was represented by both private counsel and Aetna's counsel. Following trial the jury returned a verdict in favor of the Mecsejis in the amount of $11,404.14. The Mecsejis have since garnished this sum, plus interest, from Carter Lake's account. The sole question raised in this lawsuit is whether Aetna must reimburse Carter Lake for this amount.

Federal courts are bound by the substantive law of the forum state in diversity actions. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the instant case, the cause of action arose in Iowa and the insurance policy was written in Iowa for an Iowa municipality. There is no disagreement that Iowa law applies to this case. However, this court has neither found nor been directed to any Iowa law on the question presented in this action. The court must, therefore, apply the law and fashion a remedy which, in its judgment, would be in accordance with the result reached by the Iowa Supreme Court were that court faced with the same question. In the absence of direct local authority as to state law, it is proper for a federal court to look to other sources from other jurisdictions, treatises and restatements. *Wendt v. Lillo,* 182 F.Supp. 56 (N.D.Iowa 1960).

Iowa law does provide broad principles for interpretation of insurance contracts. In *Goodsell v. State Automobile and Casualty Underwriters,* 261 Iowa 135, 153 N.W.2d 458, 461 (1967), the court outlined these principles:

> [T]he court should ascertain what the insured, as a reasonable person, understood the policy to mean, not what the insurer actually intended. [Citations omitted.] We have said on several occasions a contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary man would believe it to mean. [Citations omitted.] . . . Another rule of construction in insurance cases requires doubt or ambiguity to be construed strictly against the insurer and liberally in favor of the insured. (Citations omitted.)

This court must examine the policy provisions and decisions from other jurisdictions with these principles in mind.

The policy provision in question states:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payments of judgments or settlements.

"Occurrence" means an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Carter Lake argues that "accident" must be defined in terms of intention and that the term "accident" includes all incidents which are not actually intended by the insured. Aetna argues, however, that if the damage is the natural and probable consequence of the defendant's failure to do something, the resulting damage is not an accident.

The question of whether a liability insurance policy which insures against "accidents" covers negligently caused damages has produced results which are not all in complete accord. One school of thought concludes that damages which are the natural and probable consequences of negligent acts are not "caused by accident" within the meaning of policies of this kind. *See Hutchinson Water Co. v. U. S. Fidelity & Guaranty,* 250 F.2d 892 (10th Cir. 1957), which concerned damages sustained as a result of a fire caused by lightening. In *Hutchinson,* the city fire department had negligently failed to maintain the proper level of water pressure in their water main and firefighters were unable to contain the blaze and the damage was substantially aggravated. The court held that the aggravated damages were not caused by an accident since they were the natural and probable consequences of the negligent failure to maintain adequate water pressure for firefighting.

A slight variation on this theory was discussed in *City of Aurora, Colorado v. Trinity Universal Insurance Co.,* 326 F.2d 905 (10th Cir. 1964). There, the city operated an auxiliary pump in the sewage treatment station to avoid flooding the station. This pump increased the discharge of water into the main. During a heavy rainfall, the combination of the auxiliary pump's discharge and the rainfall overtaxed the system as a whole, and sewage backed up into the homes. The court determined that a negligently caused loss may nevertheless be accidental if the immediate or concurrent cause is an unprecedented or unforeseeable event. However, the court found that the heavy rainfalls were not unprecedented or unforeseeable, and therefore, the loss was not accidental.

In *Northwestern Electric Power Cooperative, Inc. v. American Motorists Insurance Company,* 451 S.W.2d 356 (Mo.App.1969), a power line was constructed over the middle of a piece of property rather than across a corner section, thereby causing extensive damage to the property. The power company claimed that they had accidentally and negligently strayed from the right-of-way. The court adopted a definition of accident which encompassed injury or destruction of property not intentionally inflicted but caused by the negligence of the insured. While it was agreed that the power company intended to place the power lines across the middle of the property, they did not intend to damage the property. The focus, under this theory, is on what result is intended rather than on whether the act itself was intended. *See also Orkin Exterminating Co. v. Massachusetts Bonding & Insurance Co.,* 400 S.W.2d 20 (Tex.Civ.App.1965).

Some courts have held that even accepting the premise that an accident can arise from negligent acts, not all negligent acts are accidents. In *Town of Tieton v. Gener-*

*al Insurance Company of America*, 61 Wash.2d 716, 380 P.2d 127 (1963), the town constructed a sewage lagoon a certain distance from a homeowner's well. After the facility began operation, the well became contaminated. No one contended that the contamination was intended. The evidence established that the town took a calculated business risk that the property would not be damaged which in fact may have been a wise risk to undertake. The court held, however, that when the contamination became a reality, it could not be said that the result was unusual, unexpected or unforeseen.

*American Casualty Co. of Reading, Pa. v. Minnesota Farm Bureau Service*, 270 F.2d 686 (8th Cir. 1959), presented a different version of this perspective that at some point the result of negligent acts can hardly be termed unusual, unexpected or unforeseen. In that case, a company used explosives to break up solidified chemicals in its warehouse for at least six years. This process created extensive noise, vibrations, dust and noxious ammonia fumes. The court held that the activities were continuous, voluntary, intentional, tortious and wrongful and were reasonably calculated to result in the damage complained of and could not be characterized as "caused by accident."

In the instant case, the evidence established that when the pump was overloaded and shut off, it took four to six hours before sewage would begin to back up into the Mecseji's basement. Prior to the flooding incidents, Carter Lake had been considering installing a new pumping system, but claimed it was unable to afford the pumps at that time. After the Mecseji's basement flooded, it became clear that some remedy must be provided. However, not until after the third flooding in August, 1975, did the Carter Lake maintenance supervisor suggest to the mayor that an alarm system be installed. The officials contacted the telephone company who indicated that an alarm could be set up between the pump house and the police department which would indicate when the pump had shut down so that the maintenance department could be alerted to reset

the pump well before the sewage backup would commence. It was not until January, 1976, that the City chose to install such an alarm.

■ After the first incident of flooding, it was clear that the pump could become overloaded and automatically shut off. This, in turn, would cause the flooding in question. Carter Lake personnel knew exactly what would happen if the pump shut off and was not reset within four to six hours. However, the City chose not to remedy the situation at that time and cannot now be heard to claim that the floodings subsequent to the first occurrence were unexpected or unintended as required under the insurance policy in question. In view of the facts of this case, Iowa principles of interpretation and persuasive case law from other jurisdictions, it is the judgment of this court that if the question were presented to the Iowa Supreme Court, it would hold that the subsequent floodings do not fall within the definition of "accident" under the policy here.

The jury verdict of $11,404.14 in favor of the Mecsejis included the amount of $3,902.13 for actual physical damage and $7,502 for inconvenience and the pain and suffering connected with the noxious odor. In light of this court's findings and Aetna's judicial admission that the first flooding was an accident within the meaning of the policy, a portion of the $7,502 must be allocated. In that connection, the court finds that one-sixth of said award, or $1,083.66, is attributable to the first flooding for which Aetna is liable, plus the actual damages in the amount of $418.12. In addition, Aetna is liable for that portion of interest attributable to the actual damages of $418.12 and the said special damage in the amount of $1,083.66, related to the first flooding.

A separate order will be entered this date in accordance with this memorandum.