**CITY OF CARTER LAKE, a municipal corporation in the state of Iowa, Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, a corporation, Appellee.**

No. 78–1796.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1979.

Decided July 24, 1979.

William J. Brennan, Jr., Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., for appellant; Robert L. Matthews, Jr., Omaha, Neb., on the brief.

John R. Douglas, Cassem, Tierney, Adams, Gotch & Douglas, Omaha, Neb., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and BOGUE,* District Judge.

STEPHENSON, Circuit Judge.

This is a diversity case initiated by appellant City of Carter Lake, Iowa, alleging that its comprehensive general liability insurance policy issued by the appellee, The Aetna Casualty and Surety Company, provided coverage for the negligent actions of Carter Lake's personnel which resulted in six separate incidents of sewage backup into the basement of a Carter Lake residence owned by William and Kesano Mecseji. There are essentially two issues that must be resolved on this appeal: (1) whether the policy provided coverage for the risks involved, and (2) whether Aetna has waived or is estopped from asserting a defense of non-coverage under the policy because it undertook defense of the lawsuit by the Mecsejis against the city without a reservation of rights. Without specifically addressing the estoppel issue the district court[1] ruled in favor of Aetna. The court held that the policy only covered the first incident of sewage backup, and accordingly entered judgment for Carter Lake against Aetna for $1,501.78, the amount attributable to the first backup. *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 454 F.Supp. 47 (D.Neb.1978). We agree that coverage under the policy extended only to the first

---

* The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

flooding, but are persuaded that Aetna is estopped from asserting the defense of non-coverage as to the three subsequent backups which occurred before suit was filed. Consequently, we affirm in part, reverse in part, and remand for judgment to be entered for Carter Lake for the amount attributable to the first four backups plus interest.[2]

The events that give rise to this controversy are not in dispute and were adequately delineated by the district court in its memorandum opinion.

> On February 26, 1975, the basement of one William Mecseji's house was flooded with raw sewage. The [city's] sewage pump had overloaded and had shut off. The sewage began to back up into the system and flooded the lowest area in the drainage system in the Carter Lake area, which happened to be the Mecseji basement. The city maintenance personnel reset the pump and the basement began to drain. Mr. Mecseji filed a claim against the City for his damages in the amount of $418.12. The City referred this claim to Aetna who initially denied the claim on the basis that the City was not negligent.

> Due to repeated, identical failures of the sewage pump, the Mecseji basement was flooded again on July 14, 1975, August 2, 1975, and August 21, 1975. The Mecsejis filed suit against Carter Lake on August 26, 1975 alleging that the damage to their property was the result of Carter Lake's negligence. Their complaint was subsequently amended in January, 1976, to include two additional incidents of flooding on December 16, 1975, and December 18, 1975, again due to failure of the sewage pump.[3] By letter of February 26, 1976, Aetna notified Carter Lake that it would defend the City in the lawsuit but that Aetna would not pay for any damages incurred subsequent to the first flooding, February 26, 1975. The City hired additional counsel for the trial and was represented by both private counsel and Aetna's counsel. Following trial the jury returned a verdict in favor of the Mecsejis in the amount of $11,-404.14. The Mecsejis have since garnished this sum, plus interest [$12,533.78 total], from Carter Lake's account.

*Id.* at 48.

Carter Lake then brought this action against Aetna to recover not only the amount paid to the Mecsejis, but also the attorney fees which it incurred in appealing the adverse decision in state court after Aetna refused to appeal, and for the attorney fees incurred in bringing this action.

It is undisputed that the substantive law of Iowa applies in this case. However, this court has neither been directed to, nor independently discovered, any Iowa law which directly controls the issues presented in this action. *Cf. Continental Cas. Co. v. Jackson,* 400 F.2d 285, 288–89 (8th Cir. 1968); *Poweshiek County Nat'l Bank v. Nationwide Mut. Ins. Co.,* 261 Iowa 844, 156 N.W.2d 671, 678–79 (1968) (Iowa law definition of accident as used in accidental death policies). Because it is not our task to "formulate the legal mind of the state, but merely to ascertain and apply it," *Village of Brooten v. Cudahy Packing Co.,* 291 F.2d 284, 288 (8th Cir. 1961), we have the usual problem of endeavoring to determine what the Supreme Court of Iowa would, on the facts before us, declare the law of that state to be.

I. *Policy Coverage*

■ An examination of Iowa case law does reveal certain broad principles which are used for interpretation of insurance contracts.

> [T]he court should ascertain what the insured, as a reasonable person, understood

---

2. As discussed in Part III, *infra,* the case is also remanded for further proceedings on the issue of attorney fees.

3. In January of 1976 the city installed an alarm system. When the pumps stop an alarm rings in the police station. The police then notify the maintenance supervisor, who in turn restarts the pumps. Although the pumps have stopped working on several occasions since the alarm system was installed, the alarm has adequately notified city personnel in time to avoid further backups.

the policy to mean, not what the insurer actually intended. *Umbarger v. State Farm Mutual Automobile Insurance Company,* 218 Iowa 203, 206, 254 N.W. 87, 88. We have said on several occasions a contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary man would believe it to mean. * * *

Another rule of construction in insurance cases requires doubt or ambiguity to be construed strictly against the insurer and liberally in favor of the insured. *Goodsell v. State Auto. & Cas. Underwriters,* 261 Iowa 135, 153 N.W.2d 458, 461 (1967). However, "[t]his rule does not warrant an arbitrary judicial construction of the terms of the instrument. The court must give effect to exceptions and limitations in a policy as they are written and unless it may be said there is ambiguity in the words found in the policy, there is no occasion for the exercise of choice of interpretation." *Hein v. American Family Mut. Ins. Co.,* 166 N.W.2d 363, 366 (Iowa 1969).

With these principles in mind, we examine the policy provisions in question. In the coverage part of the policy it is stated that: "The company will pay on behalf of the insured all sums which the insured shall become legally obliged to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence * * *." In a separate part of the policy labelled "Definitions," "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured[.]" The term "accident" is not further defined in the policy.

■ Carter Lake contends that the policy should be construed by ascertaining the meaning of the word "occurrence," rather than the word "accident." We disagree. It is true that "occurrence" has a broader meaning than "accident" as those words are generally understood. However, when all of the provisions of the policy are considered as a whole, there is no ambiguity as to the intention of the parties to give the word "occurrence" the restricted meaning of an accident, including continuous repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. *See* R. Keeton, Basic Text on Insurance Law § 5.4(c), at 300 (1971) (use of word "occurrence" rather than "accidents" broadens coverage by including losses from the continuing operation as well as a sudden event, but does not change coverage with relation to degree of expectability of the loss). *But see Grand River Lime Co. v. Ohio Cas. Ins. Co.,* 32 Ohio App.2d 178, 289 N.E.2d 360, 365 (1972) (use of occurrence broadens coverage).

■ It is beyond dispute that Carter Lake did not intend to cause the sewage backups. Thus, the exclusion for intentional acts is not applicable even though the underlying acts and omissions of Carter Lake were intentional. *See, e. g., N. W. Elec. Power Coop., Inc. v. American Motorists Ins. Co.,* 451 S.W.2d 356, 361–64 (Mo. App.1969); *Messersmith v. American Fidelity Co.,* 232 N.Y. 161, 133 N.E. 432, 433 (1921); 7A J. Appleman, Insurance Law and Practice § 4492 (1962). Nevertheless, Aetna maintains that the backups subsequent to February 25, 1976, were not occurrences or accidents as those terms are used in the policy because the subsequent backups were "expected." Aetna attempts to equate expected with reasonable foreseeability. In arguing for such an interpretation, Aetna primarily relies on the cases of *City of Aurora v. Trinity Universal Ins. Co.,* 326 F.2d 905 (10th Cir. 1964), *Gassaway v. Travelers Ins. Co.,* 222 Tenn. 649, 439 S.W.2d 605 (1969), and *Town of Tieton v. General Ins. Co.,* 61 Wash.2d 716, 380 P.2d 127 (1963).

In *City of Aurora v. Trinity Universal Ins. Co., supra,* the policy provided coverage for losses "caused by accident." The question before the Tenth Circuit was whether a sewage backup was caused by accident. The city had absorbed the sewage system of a newly annexed area, and later discovered

that it was inadequate. To prevent flooding of a lift station in this area, a small pump at the station was intermittently operated, increasing the discharge of water into the main. The combination of rainfall and the operation of the pump caused sewage and water to back up from the main into several residences. In holding that the loss was not caused by accident, the court stated that:

> [A] loss which is the natural and probable consequence of a negligent act is not "caused by accident", within the meaning of policies of this kind. * * * At the same time, we have been careful to recognize that negligently caused loss may be accidental, within the meaning of the policy, if in fact an immediate or concurrent cause of the loss is an unprecedented or unforeseeable event. In these circumstances, the loss is not the natural and probable consequence of the negligent act, and is hence caused by accident.

*Id.* at 906 (citations omitted).

In *Gassaway v. Travelers Ins. Co., supra,* a suit was brought by homeowners against the insurer of a corporation which had owned a lot and installed a drainage facility which discharged water underneath the house. The corporation had not disclosed the existence of the drainage facilities. The issue before the Tennessee Supreme Court was whether the corporation was insured under a policy which insured against liability caused by "accident." The court found that the corporation had not intended to cause the damage and had been guilty of only ordinary negligence. The court held that although the policy covered some acts of negligence, it did not cover all such acts. The court approved the following definition: "Accident as used in insurance liability policies [is] an event not reasonably to be foreseen, unexpected and fortuitous." *Id.,* 439 S.W.2d at 608. The court further stated:

> The element of foreseeability cannot be ignored. The Circuit Court determined V & M Homes knew these drainage facilities created a risk and under these facts we think V & M Homes could reasonably foresee that what did occur could occur.

When a reasonably foreseeable event does occur, it cannot be said to be a result that was unforeseen and unexpected or fortuitous.

*Id.* 439 S.W.2d at 608–09.

In *Town of Tieton v. General Ins. Co., supra,* the town constructed a sewage lagoon adjacent to the property of David and Jean Pugsley. As a result of the operation of the sewage facility, the Pugsleys' well became contaminated and they recovered a judgment from the town. The record indicated that seepage is a normal and expected result of this type of sewage facility, and that prior to the construction of the lagoon the town had been advised by health officials of the possibility of the lagoon contaminating the Pugsleys' well. In holding that the damage to the Pugsleys' property was not caused by accident, the Washington Supreme Court stated:

> No one contends that the contamination of the well was intended. Yet, the lack of such intent does not by itself compel us to conclude that such result was "caused by accident." The element of foreseeability cannot be ignored. * *
>
> The evidence most favorable to respondent supports no more than a finding that respondent took a calculated business risk that the Pugsley property would not be damaged. From a business standpoint, it may have been wise to have taken this calculated risk and to have proceeded with the construction of the lagoon without first condemning the Pugsley property or arranging to supply water to it by means other than their well. But, when, under the facts of this case, the possibility of contamination became a reality, it cannot be said that the result was "unusual, unexpected, and unforeseen."

*Id.* 380 P.2d at 130–31.

The opinions in these cases paint with too broad a brush and apparently represent a minority view. *See* 7A J. Appleman, Insurance Law and Practice § 4492 (1962). Cases from other jurisdictions view the problem

from a different perspective. *See, e. g., Cross v. Zurich Gen. Accident & Liab. Ins. Co.,* 184 F.2d 609 (7th Cir. 1950); *N. W. Elec. Power Coop., Inc. v. American Motorists Ins. Co., supra,* 451 S.W.2d at 361–64; *McGroarty v. Great American Ins. Co.,* 36 N.Y.2d 358, 368 N.Y.S.2d 485, 329 N.E.2d 172 (1975), *aff'g* 43 A.D.2d 368, 351 N.Y. S.2d 428 (1974); *Orkin Exterminating Co. v. Massachusetts Bonding & Ins. Co.,* 400 S.W.2d 20, 26–27 (Tex.Civ.App.1965). These cases, which involve policy clauses which provide coverage for losses "caused by accident," generally take the approach that if the damage was not intentionally caused, it was caused by accident. Whether the damage was expected is not considered. A somewhat typical example is *Cross v. Zurich Gen. Accident & Liab. Ins. Co., supra.* In *Cross,* while the plaintiffs were engaged in the cleaning of an exterior of a building several windows were damaged by the cleaning solution. In holding that the damage was caused by accident the court stated:

> Plaintiffs may have been negligent in not keeping sufficient water on the windows, but the very fact that water was applied to each window negatives any idea that plaintiff intended to damage same. And lacking such intent, the damage was accidental, even though caused by negligence.

*Id.* at 611.

In the present case after the first incident of flooding the Mecsejis presented a claim to the city for their actual damages of $418.12. After examination of the claim the city's attorney recommended that it be paid, and it was forwarded to Aetna. Aetna responded in a letter to the Mecsejis denying liability. The letter stated in part: "In order for us to be legally responsible, our insured must be guilty of negligence." Aetna is now in effect claiming that because the city was negligent, *i. e.,* the injury was reasonably foreseeable, there is no coverage.

■ To adopt Aetna's interpretation that an injury is not caused by accident because the injury is reasonably foreseeable would mean that only in a rare instance would the comprehensive general liability policy be of any benefit to Carter Lake. Enforcement of the policy in this manner would afford such minimal coverage as to be patently disproportionate to the premiums paid and would be inconsistent with the reasonable expectations of an insured purchasing the policy. *See* 7A J. Appleman, Insurance Law and Practice § 4493, at 16 n.26 (1972). Under Aetna's construction of the policy language if the damage was foreseeable then the insured is liable, but there is no coverage, and if the damage is not foreseeable, there is coverage, but the insured is not liable. This is not the law. The function of an insurance company is more than that of premium receiver. *See, e. g., Hutchinson Water Co. v. United States Fidelity & Guaranty Co.,* 250 F.2d 892, 894 (10th Cir. 1957); *City of Kimball v. St. Paul Fire & Marine Ins. Co.,* 190 Neb. 152, 206 N.W.2d 632 (1973); *N. W. Elec. Power Coop., Inc. v. American Motorists Ins. Co., supra.*

■ An interpretation of the word "accident" as used in this type of comprehensive general liability policy which is consistent with the results reached in most of the cases confronting the issue, if not the broad language sometimes employed, is to look at the question of whether a result is "expected" as a matter of probability. We reject the argument that a result is expected as that term is used in insurance policies simply because it was reasonably foreseeable. The reasonable expectation of an insured in securing a comprehensive general liability policy is that it will cover some negligent acts. It does not follow, however, that because the policy covers some negligent acts it must cover all negligent acts. An insured need not know to a virtual certainty that a result will follow its acts or omissions for the result to be expected. *But see State Farm Fire & Cas. Co. v. Muth,* 190 Neb. 272, 207 N.W.2d 364 (Neb.1973). Rather, each case must be determined by examination of the totality of the circumstances. For the purposes of an exclusionary clause in an insurance policy the word "expected" denotes that the actor knew or should have known that there was a substantial proba-

bility[4] that certain consequences will result from his actions. If the insured knew or should have known that there was a substantial probability that certain results would follow his acts or omissions then there has not been an occurrence or accident as defined in this type of policy when such results actually come to pass. The results cease to be expected and coverage is present as the probability that the consequences will follow decreases and becomes less than a substantial probability. *See* R. Keeton, Basic Text on Insurance Law § 5.4(c), at 298–300 (1971).

■ After the first backup, the probability of an identical equipment failure and consequential flooding of the Mecsejis' basement on a particular day was relatively slight, about 2% with hindsight. However, there was clearly a substantial probability of another backup at some time caused by an identical equipment failure if the equipment was not replaced or an alarm system installed. Nevertheless, Carter Lake took the calculated risk that such backup would not occur, and elected to continue operations without correcting its methods. Once the city was alerted to the problem, its cause, and the likelihood of reoccurrence, it could not ignore the problem and then look to Aetna to reimburse it for the liability incurred by reason of such inaction. *See Western Cas. & Sur. Co. v. City of Frankfort*, 516 S.W.2d 859, 860 (Ky.1974); *Bennett v. Fidelity & Cas. Co.*, 132 So.2d 788 (Fla.App.1961). Accordingly, the floodings subsequent to the February 26, 1975, incident were not unexpected and thus were not accidents or occurrences as those terms were used in the insurance policy.

## II. *Estoppel*

■ The vexing problem of determining whether Aetna is estopped[5] from asserting the defense of non-coverage remains. Carter Lake contends that by assuming the defense of Carter Lake during the state court lawsuit filed by the Mecsejis, Aetna is now estopped from denying coverage for the liability incurred as a result of the first four backups.[6]

■ Iowa follows the general rule that the doctrine of estoppel may not be used "to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Randolph v. Fireman's Fund Ins. Co.*, 255 Iowa 943, 124 N.W.2d 528, 531–32 (1963). *See also Richardson v. Iowa State Traveling Men's Ass'n*, 228 Iowa 319, 291 N.W. 408, 412 (1940); *Pierce v. Homesteaders Life Ass'n*, 223 Iowa 211, 272 N.W. 543, 546 (1937). A widely recognized exception to this general rule is that when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage. *See, e. g., Pacific Indem. Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169, 1173 (5th Cir. 1973); *National Union Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 127 U.S.App.D.C. 364,

---

4. The difference between "reasonably foreseeable" and "substantial probability" is the degree of expectability. A result is reasonably foreseeable if there are indications which would lead a reasonably prudent man to know that the particular results could follow from his acts. Substantial probability is more than this. The indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur.

5. The issue in this case is properly framed in terms of estoppel rather than waiver. Waiver is a voluntary and intentional relinquishment of a known right. Where the loss is not covered by the policy it is inaccurate to speak of waiver, since there is nothing to waive. " 'Estoppel,' on the other hand, refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion." 16A J. Appleman, Insurance Law and Practice § 9081, at 280 (1968). *See also* 18 Couch on Insurance 2d §§ 71:1, et seq. (R. Anderson 2d ed. 1965).

6. Carter Lake does not contend that estoppel should be extended to the December 1975 backups. In any event, Aetna's reservation of rights letter in February 1976 was timely as to those backups. *Cf. Fidelity & Cas. Co. v. Riley*, 380 F.2d 153 (5th Cir. 1967) (reservation of rights not timely as to one suit but was as to others).

366, 384 F.2d 316, 318 (1967); *Fidelity & Cas. Co. v. Riley*, 380 F.2d 153 (5th Cir. 1967); *Salerno v. Western Cas. & Sur. Co.*, 336 F.2d 14 (8th Cir. 1964); *Ford Motor Co. v. Commissary, Inc.*, 286 F.Supp. 229, 233 (N.D.Ill.1968). *See generally* 7A J. Appleman, Insurance Law & Practice §§ 4692, 4693 (1962). The insurer's conduct may operate as an estoppel regardless of the fact that there has been no actual fraud on the part of the insurer. *See United States v. Fidelity & Cas. Co.*, 402 F.2d 893, 898 (4th Cir. 1968). There is no reason to believe that the Iowa Supreme Court would hold to the contrary if confronted with the issue. *See Inghram v. Dairyland Mut. Ins. Co.*, 178 N.W.2d 299, 304 (Iowa 1970); *Fullerton v. United States Cas. Co.*, 184 Iowa 219, 167 N.W. 700, 704 (1918); *McCann v. Iowa Mut. Liability Ins. Co.*, 231 Iowa 509, 1 N.W.2d 682, 688–89 (1942); *Roach v. Estate of Ravenstein*, 326 F.Supp. 830, 835, 838 (S.D.Iowa 1971). *Cf. Hully v. Aluminum Co. of America*, 143 F.Supp. 508 (S.D.Iowa 1956) (estoppel because of negligence of insurer's agent in not procuring policy of type requested by insured).

■ Aetna claims on this appeal that since its policy provided coverage for the first backup, it had a duty to accept the defense of the entire lawsuit and that it informed Carter Lake of non-coverage by a reservation of rights [7] letter within a reasonable time after becoming aware of the fact that there was no coverage. Aetna further argues that Carter Lake was not prejudiced by Aetna's assumption of the defense.

■ Aetna's first contention rests on the premise that it timely reserved its rights to assert non-coverage because it did not learn of the true facts concerning the subsequent backups until the Mecsejis' depositions were taken on February 13, 1976. The reservation of rights letter to Carter Lake followed on February 26, 1976. However, Aetna was informed by Carter Lake of the first backup on March 20, 1975, and conducted an investigation of the February 26, 1975, incident at that time. Moreover, the Mecsejis filed an action to recover damages for the first four backups on August 26, 1975, and the city timely tendered to Aetna the defense of that action. At least by September of 1975 Aetna was apprised of the contents of the complaint. The original letter from the Mecsejis requesting reimbursement for their expenses and the complaint in the suit filed in August disclose precisely the nature of their claim and the ground upon which they sought to hold the city liable. It is evident that the Mecsejis were claiming that the injury they suffered from the four separate backups was caused by the city's negligence in not maintaining a working pump. The depositions of the Mecsejis did not reveal any new evidence in this regard. Thus, at least by September of 1975 Aetna had sufficient knowledge of facts to put it on constructive notice of the possibility of non-coverage. *See Fidelity & Cas. Co. v. Riley*, 380 F.2d 153, 157 (5th Cir. 1967); *Ford Motor Co. v. Commissary, Inc., supra*, 286 F.Supp. at 233–34. *See generally* 14 Couch on Insurance 2d § 51:77, at 583 (R. Anderson 2d ed. 1965).

When Aetna assumed the defense of the action it had every means of ascertaining whether or not the losses were ones for which it was liable under the policy. Despite the fact that the complaint alleged four separate backups, Aetna immediately undertook defense of the action by filing a general appearance in September without any indication that it might deny coverage. An insurer has a right to a reasonable time to investigate a claim and decide whether to resort to policy defenses discovered. However, Aetna did not disclaim within a reasonable time. The complaint, which alleged

---

7. Reservation of rights is a means by which prior to determination of the liability of the insured, the insurer seeks to suspend the operation of waiver and estoppel. When coverage is in doubt, the insurer may offer to defend the insured, reserving all of its policy defenses in case the insured is found liable. Upon such notification the insured may either accept the reservation of rights and allow the company to defend or it may reject the reservation of rights and take over the defense itself.

all of the pertinent facts demonstrating non-coverage, was filed over six months prior to the disclaimer. Carter Lake justifiably assumed that control of the defense was with Aetna because Aetna had apparently undertaken its obligation to defend. Yet it conducted no further investigation nor notified Carter Lake of its intention to deny coverage until after the Mecsejis' depositions were taken on February 13, 1976.

Aetna was under a duty to make a determination of its position based on the facts that it knew or should have known and to inform the city of its position within a reasonable time. *See Pacific Indem. Co. v. Acel Delivery Serv., Inc., supra*, 485 F.2d at 1174–75; *Maryland Cas. Co. v. Peppers*, 29 Ill.App.3d 26, 329 N.E.2d 788, 791 (1975); *Ebert v. Balter*, 83 N.J.Super. 545, 200 A.2d 532, 537 (1964). *See generally* 14 Couch on Insurance 2d § 51:77, at 583 (R. Anderson 2d ed. 1965). Since Aetna did not inform the city that it was disclaiming coverage until almost six months after the Mecsejis' lawsuit had been filed, its reservation of rights letter written on February 26, 1976, was not sufficiently timely to defeat the claim of estoppel.

A related contention urged by Aetna is that Carter Lake was not prejudiced by Aetna's delay in notifying Carter Lake that it was defending under a reservation of rights. In support of its position Aetna notes that Carter Lake's own attorney was involved in the lawsuit from the beginning and further claims that there was ample time between the February 26, 1976, reservation of rights letter and the trial on May 4, 1976, for Carter Lake to prepare an adequate defense.

There is authority for the proposition that prejudice is presumed from undertaking the defense of an action without a reservation of rights or, alternatively stated, that the loss of control of one's own case is itself prejudice. *See, e. g., Salerno v. Western Cas. & Sur. Co., supra*, 336 F.2d at 14; *Pendleton v. Pan American Fire & Cas. Co.*, 317 F.2d 96, 99 (10th Cir. 1963) (settlement); *Schmidt v. National Auto. & Cas. Ins. Co.*, 207 F.2d 301, 304–05 (8th Cir.

1953); *General Tire Co. v. Standard Accident Ins. Co.*, 65 F.2d 237, 240 (8th Cir. 1933); *Ford Motor Co. v. Commissary, Inc., supra*, 286 F.Supp. at 234–35; *American Cas. Co. v. Shely*, 314 Ky. 80, 234 S.W.2d 303, 305 (1950); *Transamerica Ins. Group v. Chubb & Son, Inc.*, 16 Wash.App. 247, 554 P.2d 1080 (1976). *See generally* 14 Couch on Insurance 2d §§ 51:80, 51:91–93 (R. Anderson 2d ed. 1965). In any event, Carter Lake was prejudiced by Aetna's untimely reservation of rights.

It is true that Carter Lake did have an attorney of record, John Churchman, from the beginning. However, a review of his testimony before the federal district court and the transcript from the state trial discloses that the bulk of the defense was prepared and executed by John Sens, attorney for Aetna. Carter Lake justifiably assumed from the time Aetna entered the lawsuit it was looking after the city's interests. *See Ford Motor Co. v. Commissary, Inc., supra*, 286 F.Supp. at 236. The city reasonably believed that Aetna was maintaining its original position first stated in the April 16, 1975, letter to the Mecsejis that the city was not negligent and that Aetna was covering the later incidents because it was covering the first. In these circumstances the participation of Carter Lake's attorney in the defense of the action did not prevent the operation of estoppel. *See* 14 Couch on Insurance § 51:77, at 583 (R. Anderson 2d ed. 1965).

Carter Lake was prejudiced in that Aetna's untimely notification of denial of coverage hampered settlement efforts between the city and the Mecsejis. In his testimony in the federal district court, Churchman stated that if he had been aware that Aetna was denying coverage he would have made a concerted effort to settle the case at an earlier stage of the proceedings. There is evidence in the record that the Mecsejis would have accepted a settlement well under the amount obtained at trial.

Furthermore, Aetna's notice of reservation of rights within two months of trial deprived Carter Lake of the opportunity to conduct full and timely pretrial discovery

such as propounding interrogatories and taking depositions of potential witnesses in addition to the Mecsejis. While we will not speculate as to precisely how the defense might have been pursued in the absence of Aetna's management of the suit, we are persuaded that under the facts of this case Aetna's actions deprived Carter Lake of the opportunity to more ably protect its interest by conducting an initial early investigation and considering all possible lines of defense, particularly with a view toward settlement. *See Transamerica Ins. Group v. Chubb & Son, Inc., supra,* 554 P.2d at 1083; *Merchants Indem. Corp. v. Eggleston,* 37 N.J. 114, 179 A.2d 505, 511 (1962).

Another reason why Aetna will not be permitted to assume management of the defense for six months and then deny liability is that there is a possibility of a conflict of interest. During the time Aetna had control of the city's defense against the Mecsejis' claims, its attorneys could have simultaneously prepared a defense for Aetna against the city on policy coverage. *See Pacific Indem. Co. v. Acel Delivery Serv., Inc., supra,* 485 F.2d at 1176; *Transamerica Ins. Group v. Chubb & Son, Inc., supra,* 554 P.2d at 1083.

In sum, we are convinced that a holding of liability for the first four backups under all the circumstances of this case is consistent with Iowa law and the law of this circuit because it is based upon sound policy considerations. The proper conduct of the insurer in this case would have been to conduct a prompt investigation to determine whether there was coverage. Had Aetna, after filing its answer, made further inquiry in an attempt to determine whether there was coverage and reserved its rights within a reasonable time thereafter, we would perhaps draw different conclusions. *See Inghram v. Dairyland Mut. Ins. Co.,* 178 N.W.2d 299, 304 (Iowa 1970); 7A J. Appleman, Insurance Law & Practice § 4693, at 529–30 (1962). Aetna made the decision to represent Carter Lake when it filed an answer on the city's behalf and it failed to give notice of its intention to deny coverage for over six months. It will not be permitted to now say that it was unaware of the existence of the policy defense at the time it assumed the representation of Carter Lake by entering an appearance and conducting the defense. Consequently, Aetna is estopped from denying coverage for the first four incidents of sewage backup.

III. *Attorney Fees*

Carter Lake has also requested that it be reimbursed for attorney fees incurred in the appeal of the state court action and the trial below. Carter Lake relies on Neb. Rev.Stat. § 44–359 (1974), which provides in general that in an action against an insurance company attorney fees are to be awarded to the opposing party if judgment is rendered against the insurance company.

The threshold question is whether Nebraska considers this statute to be substantive or procedural. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). If the statute is substantive the law of the state governing the contract (Iowa) also controls on the issue of attorney fees, and if it is procedural the law of the forum (Nebraska) must be applied. In *Hawkeye Cas. Co. v. Stoker,* 154 Neb. 466, 48 N.W.2d 623, 634 (1951), the Nebraska Supreme Court stated that the statute is procedural. Thus, the law of Nebraska applies. *But see Prudential Ins. Co. v. Carlson,* 126 F.2d 607, 611 (10th Cir. 1942). *Cf. National Postal Transport Ass'n v. Hudson,* 216 F.2d 193, 200–01 (8th Cir. 1954) (applied Kansas law for interpretation of contract and for allowance of attorney fees even though forum was Missouri district court). Since Carter Lake was not the prevailing party below the district court did not consider whether it otherwise qualified under the statute. The case is remanded to the district court for a determination if the statute applies in all other respects to the facts of this case. If it does apply the district court shall award reasonable attorney fees to Carter Lake.

The decision of the district court is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.