Paul CARNEY, individually and Christopher Benson, individually, Plaintiffs,

v.

Donald K. WHITE, individually, the Village of Darien, Darien Chief of Police Donald Hoppe, Michael Obershaw, President of Village of Darien, Kenneth Blank, Harold Mayer, Curtis Schellhase, Dean Logterman, Wesley Hanson, Village Trustees, Tower Insurance Company, Inc., an insurance corporation now known as GRE Corp., Employers Mutual Casualty Company, a mutual company, Defendants.

No. 91–C–681 (JPS).

United States District Court, E.D. Wisconsin.

Jan. 27, 1994.

Michael J. Cohen, Meissner and Tierney, S.C., Milwaukee, WI, Jerome Wiener, Schain, Firsel, Burney, Ltd., Chicago, IL, for plaintiffs.

Michael J. Cieslewicz, Vicki L. Arrowood, Kasdorf, Lewis & Swietlik, S.C., Milwaukee, WI, for defendants Village of Darien, Donald Hoppe, Michael Obershal, Kenneth Blank, Harold Mayer, Curtis Schellhase, Joseph Moran, Dean Logterman, Wesley Hanson, and Employers Mut. Cas. Co.

Tomislav Z. Kuzmanovic, Hinshaw & Culbertson, Milwaukee, WI, for defendant GRE Corp.

1. At various times throughout this action, Mr. Obershaw has also been referred to as Mr. Obershal and Mr. Obershall. The court presumes that these references are erroneous and that all of these names describe the same individual—Michael Obershaw, member of the Board of Trustees for the Village of Darien from 1979 through 1981 and President of the Village Board from 1983 through 1985.

## DECISION AND ORDER

STADTMUELLER, District Judge.

### Introduction

Plaintiffs Paul Carney and Christopher Benson filed this action under 42 U.S.C. § 1983, alleging that defendant Donald K. White violated their constitutional rights when he harassed and threatened them, and attempted to coerce them into engaging in sexual acts in exchange for dismissing charges levied against them in connection with a traffic stop on July 4, 1985. In addition, plaintiffs' complaint alleges liability on the part of the Village of Darien, Darien Chief of Police Donald Hoppe, Village of Darien President Michael Obershaw,[1] and Village of Darien Trustees Kenneth Blank, Harold Mayer, Dean Logterman, and Wesley Hanson (hereinafter referred to as "the Village defendants"), for failing to prevent Officer White from engaging in such conduct despite the fact that they knew or should have known that he had engaged in such conduct in the past.

The action is presently before the court on four motions: (1) a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the Village of Darien defendants;[2] (2) a motion for summary judgment filed by the Village defendants and Empire Mutual Casualty Company (hereinafter "EMCC") seeking a declaratory judgment on the issue of insurance coverage; (3) a motion for summary judgment of dismissal filed by the Village defendants asking the court to dismiss plaintiffs' complaint for failure to state a claim for relief under § 1983, and because Donald White was not acting within the scope of his employment when he committed the offenses alleged; and (4) a motion for summary judgment filed by the Village defendants asking the court to dismiss Don-

2. Defendants filed their motion to dismiss on September 2, 1992. Plaintiffs argued that defendants' motion was made moot when they filed an amended complaint on October 30, 1992, which contained a more detailed factual account than the original complaint and which set forth more fully the bases for municipal liability. Defendants disagreed, however, and have asked the court to render a decision on their motion to dismiss.

ald Hoppe from the action. These motions are now fully-briefed and ready for decision.

### Facts and Procedural History

On July 4, 1985, plaintiffs Paul Carney and Christopher Benson were driving on Wisconsin Route 14 in the Village of Darien, when Donald K. White, a police officer with the Village of Darien, effected a traffic stop on the vehicle in which they were travelling. Officer White issued traffic citations and arrested the two for having open intoxicants in the vehicle. The charges were subsequently dropped and the traffic citations voided.

On June 26, 1991, plaintiffs filed an action in this court alleging that Officer White violated plaintiffs' constitutional rights in connection with the aforementioned arrests. Specifically, plaintiffs alleged that Officer White harassed and threatened them, and attempted to coerce them into engaging in sexual acts with him in exchange for his dismissing the charges against them and voiding the traffic citations issued.

Plaintiffs filed a first amended complaint on October 30, 1992, which contained six counts. In Counts I and II, plaintiffs claim violations under 42 U.S.C. § 1983 on behalf of Paul Carney. Count I alleges that Officer White "infringed upon and deprived Paul Carney of his constitutionally protected rights of privacy and his liberty interest in bodily integrity, in violation of his rights under the due process clause, and in violation of his right to be free from unreasonable searches and seizures," all under color of state law and with deliberate, willful, malicious and reckless disregard for Carney's rights. Count II alleges liability on the part of the Village of Darien, Darien Chief of Police Donald Hoppe, Village of Darien President Michael Obershaw, and the Village Trustees—Kenneth Blank, Harold Mayer, Curtis Schellhase, Joseph Moran, Dean Logterman, and Wesley Hanson. Specifically, plaintiffs allege that Officer White committed acts of misconduct similar to those alleged in plaintiffs' complaint on numerous occasions prior to and after July 4, 1985, and that the Village defendants, while aware that Officer White was engaging in this type of conduct, took no action to determine whether he was fit to continue to serve as a police officer for the Village of Darien. In particular, plaintiffs allege that defendants knew or should have known that, in 1984, Officer White offered to drop or void a traffic citation issued to Michael M. Rowe, in exchange for sexual favors; Officer White was prosecuted for the alleged offense against Rowe, found guilty and sentenced to a term of imprisonment. Further, plaintiffs allege, after the Police Chief became ill, the Village Officials allowed Officer White to work unsupervised, despite the fact that they were aware of numerous complaints filed concerning Officer White's abusiveness, aggression and misuse of his position as a police officer. Plaintiffs allege that such acts and omissions—performed by defendants as agents of the Village of Darien and under color of state law—caused Carney's constitutionally-protected rights to be violated. Counts IV and V allege that the same facts as set forth in Counts I and II resulted in violations of Christopher Benson's constitutionally-protected rights. Counts I, II, IV and V also alleged liability on the part of Tower Insurance Company, Inc. ("Tower"), and Employers Mutual Casualty Company ("EMCC"). Both of these companies issued insurance policies to the Village of Darien which were in effect at the time of the alleged constitutional deprivations. In Counts III and VI, plaintiffs allege that, pursuant to section 895.46(1)(a) of the Wisconsin Statutes, the Village of Darien is liable as indemnitor for the payment of all damages—including punitive damages and attorneys' fees, awarded against Officer White and the Village defendants. In their complaint, plaintiffs requested compensatory damages in an amount in excess of $50,000.00, punitive damages in an amount not less than $1,000,000.00, and attorneys' fees and costs.

By order dated April 8, 1992, this court entered a judgment of default against Donald K. White with respect to his liability under Counts I and IV of plaintiffs' complaint. The issue of damages was left open, to be assessed and determined by a jury at the time plaintiffs' claims against the nondefaulting defendants are considered.

On May 27, 1992, the Village defendants and EMCC filed a motion for summary judgment asking the court to enter a declaratory

judgment on the issue of insurance coverage. Specifically, these defendants ask the court to find that Tower Insurance Company, which is a member of the GRE Corp. group of companies, has a duty to defend this action and to indemnify these defendants in the event plaintiffs prevail and are awarded damages.

On September 3, 1992, the Village defendants and EMCC filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and two additional summary judgment motions—one motion asked the court to dismiss defendant Donald Hoppe from the action for lack of personal jurisdiction; the second asked the court to dismiss plaintiffs' complaint because it cannot sustain a cause of action under 42 U.S.C. § 1983, and because Officer White, to the extent he committed the offenses alleged in the complaint, was not acting within the scope of his employment as a police officer with the Village of Darien.

These motions have all been fully-briefed and are now ripe for consideration.

**Discussion**

**I. Motion To Dismiss**

On September 2, 1992, defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion asks the court "to dismiss the Village of Darien and its employees in this action." It is well settled that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), *quoted in Means v. City of Chicago,* 535 F.Supp. 455, 458 (N.D.Ill. 1982). Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true the factual allegations in plaintiffs' complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Strauss v. City of Chicago,* 760 F.2d 765, 766 (7th Cir.1985).

Although plaintiffs' complaint names the Village officials individually, this action is properly characterized as a suit against the Village of Darien, a municipality. *See Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) (a § 1983 claim against an official of a municipality in his or her official capacity is treated as a claim against the municipality itself). Therefore, the issue before the court is whether plaintiffs' complaint adequately states a claim for relief against the municipality. The United States Supreme Court's decision in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), is "[t]he starting point for judging potential liability of a municipality under § 1983 ..." *Means,* 535 F.Supp. at 458. In *Monell,* the Supreme Court held that a city is a "person" for the purpose of § 1983. In addition, the Court held that, although a municipality may not be held liable under § 1983 solely on a theory of *respondeat superior,* it **may** be held liable under § 1983 for constitutional violations caused by its official policies, including unwritten customs. *Id.* 436 U.S. at 690–94, 98 S.Ct. at 2035–37. Municipal liability "must rest on the city's conduct, i.e., an official policy, custom or practice which is causally linked to the conduct of the employee and the resulting injury to the plaintiff." *Means,* 535 F.Supp. at 458 (citing *Monell,* 436 U.S. at 690–94, 98 S.Ct. at 2035–37; *Powe v. City of Chicago,* 664 F.2d 639, 643 (7th Cir.1981); *Murray v. City of Chicago,* 634 F.2d 365, 366–67 (7th Cir.1980)). The Court in *Monell* found "no constitutional impediment to municipal liability," 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54, and concluded as follows:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

468

injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037. The Supreme Court specifically did not decide "what the full contours of municipal liability under § 1983 may be," *id.* at 695, 98 S.Ct. at 2038, leaving further development of the issue for another time.

In *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court revisited the issue of municipal liability under § 1983; specifically, the court considered whether, and in what circumstances, a decision by municipal policymakers on a single occasion may give rise to municipal liability. In that case, the Court stated that *Monell's* "official policy" requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible . . .—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur,* 475 U.S. at 479–80, 106 S.Ct. at 1298. In light of this standard, the Court reasoned that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S.Ct. at 1298. However, the Court quickly noted that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability," *id.* at 481, 106 S.Ct. at 1299, and ultimately held that:

> municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* 483–84, 106 S.Ct. at 1300.

In *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985), the Seventh Circuit applied the *Monell* test to determine whether the district court's dismissal of plaintiff Craig Strauss's complaint was proper. In that case, a police officer with the City of Chicago injured plaintiff while placing him under arrest. Plaintiff filed a § 1983 action alleging that the City of Chicago was liable for his injuries because the City's policies proxi-

mately caused the unlawful police conduct. Specifically, Mr. Strauss alleged that the City had the following customs and practices: hiring persons with a history of brutality; allowing its police officers to remain on the job "even though their experience on the job showed them to be brutal in nature and frequent violators of civil rights of persons in custody"; allowing persons in custody "to be silenced by causing them to be beaten and physically abused"; and conducting investigations into complaints made against police officers in such a manner as to allow the officers to be exonerated and to remain on the job. *Id.* at 766. The City moved to dismiss Strauss's complaint for failure to state a claim, and the district court granted the City's motion. On appeal, the Seventh Circuit reiterated the standard set forth in *Monell,* noting that municipal liability under § 1983 is possible, but that it may not attach solely on a theory of *respondeat superior;* proximate causation between the municipality's policy or custom and plaintiff's injury must be present. *Strauss,* 760 F.2d at 766–67 (citing *Monell,* 436 U.S. at 690–91, 693–94, 98 S.Ct. at 2035–36). The Seventh Circuit further noted that, to be successful, plaintiff must establish that he was injured, and that some municipal policy, custom or practice proximately caused the injury; an "allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality." *Id.* at 767 (citing *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981); *Powe v. City of Chicago,* 664 F.2d 639, 649–50 (7th Cir.1981); *Rivera v. Farrell,* 538 F.Supp. 291, 295 (N.D.Ill.1982)). In light of this standard, the Seventh Circuit concluded that, although Mr. Strauss "identified four separate 'custom[s]' and 'practice[s],' one or more of which may have caused his injury," he was not entitled to recover from the City under § 1983 because "the only facts alleged related to [plaintiff's] arrest," and because "[n]othing in the complaint suggests that the incident was other than an isolated one unrelated to municipal policy . . . ." *Id.* at 767. Accordingly, the Seventh Circuit affirmed the district court's dismissal for failure to state a claim. *Id.*

Of particular relevance to this action was the Seventh Circuit's conclusion in *Strauss* that municipal liability under § 1983 may not attach "when the policy identified is nothing more than acquiescence in prior misconduct." *Id.* at 767. With respect to this issue, the court stated as follows:

> The third and fourth policies that Strauss identified, those of allowing police officers physically to abuse those in custody and of corruption in the investigative process, clearly are aspects of a policy of acquiescence in known constitutional violations. Strauss might argue that the first two policies, those of hiring and retaining in employment as police officers individuals with known histories of brutality, constitute affirmative policies by the City going beyond mere acquiescence. But what the allegations amount to is that the City has hired brutal persons as police officers (without any indication that the City knew or should have known of the prior history of brutality) and then retained them even after receiving notice of the individuals' violent propensities. In other words, the City has supposedly acquiesced in the physical abusiveness of such persons by not taking steps to fire them or to investigate reported offenses properly.

*Id.* at 767 n. 3.

In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court considered whether a federal court may apply a "heightened pleading standard"—that is, whether a court may require more than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)—in civil rights cases alleging municipal liability under 42 U.S.C. § 1983. The Court held that it could not:

> We think that it is impossible to square the "heightened pleading standard" ... with the liberal system of "notice pleading" set up by the Federal Rules. Rule 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), we said in effect that the Rule meant what it said:

> "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. at 103 (footnote omitted).

*Leatherman,* —— U.S. at ——, 113 S.Ct. at 1163.

The district courts within the Seventh Circuit consistently have read *Leatherman* to nullify the pleading requirement set forth in *Strauss.* *See Admiral Theater v. City of Chicago,* 832 F.Supp. 1195 (N.D.Ill.1993) (*Leatherman* "has drawn the fangs of *Strauss* "; Supreme Court once again confirms "that the notice-pleading regime of the Rules, and not a fact pleading approach, remains the order of the day."); *Bey v. Elrod,* No. 91–C–2131, 1993 WL 303127, U.S.Dist. LEXIS 10999 (N.D.Ill. Aug. 6, 1993) (since *Leatherman,* heightened pleading requirements of *Strauss* no longer valid); *Montique v. Sheriff of Cook County,* No. 92–C–8312, 1993 WL 192934, 1993 U.S.Dist. LEXIS 7525 (N.D.Ill. June 1, 1993) (*Leatherman* invalidates the pleading requirement in *Strauss*); *Moore v. Yost,* No. 91–C–784, 1993 WL 101720, 1993 U.S.Dist. LEXIS 4287 (N.D.Ill. March 31, 1993) (*Leatherman* rejects heightened standard of *Strauss*); *Ciccotosto v. Holem,* No. 92–C–20065, 1993 WL 87722, 1993 U.S.Dist. LEXIS 3827 (N.D.Ill. March 26, 1993) (*Leatherman* rejects *Strauss;* mere allegations are sufficient); *Jacobson v. Adams,* No. 92–C–20123, 1993 WL 78766, 1993 U.S.Dist. LEXIS 3387 (N.D.Ill. March 19, 1993) (*Leatherman* rejects *Strauss*); *Hammond v. Town of Cicero,* 822 F.Supp. 512 (N.D.Ill.1993) (*Leatherman* overrules heightened pleading standard set forth in *Strauss*). *But see Blanton v. City of Indianapolis,* 830 F.Supp. 1198, 1203 n. 7 (S.D.Ind.1993) (no conflict between *Strauss* and *Leatherman* because *Strauss* did not create a "heightened pleading requirement"; "[r]ather, *Strauss* held only that a § 1983 plaintiff, to fairly set out 'the grounds upon which the claim rests,' must plead 'some fact'—meaning something more than 'no facts'—which indicate that the

alleged municipal policy does in fact exist.") (quoting *Strauss,* 760 F.2d at 767–68).

■ Although it appears that this question has not yet been considered in this district, I am in agreement with my colleagues in the Northern District of Illinois; to the extent *Strauss* prescribed a "heightened pleading requirement" for § 1983 complaints, since the Supreme Court's decision in *Leatherman,* that requirement is no longer valid. Thus, in order to withstand a motion to dismiss under Rule 12(b)(6), a complaint need only provide "a short and plain statement of the claims that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman,* —— U.S. at ——, 113 S.Ct. at 1163 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). In a § 1983 case, this requirement means that the plaintiff must show that (1) he or she holds a constitutionally protected right; (2) a deprivation of that right occurred; (3) defendants intentionally caused the deprivation; and (4) defendants acted under color of law. *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988). In addition, when attempting to hold liable a municipality or an individual in his or her official capacity, plaintiff must also show that the constitutional deprivation was caused by an official policy or custom of the municipality. *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Monell,* 436 U.S. 658, 691–94, 98 S.Ct. at 2036–37; *Powe v. City of Chicago,* 664 F.2d 639, 643 (7th Cir.1981); *Baugh v. City of Milwaukee,* 823 F.Supp. 1452 (E.D.Wis. 1993).

■ In their motion for dismissal under Rule 12(b)(6), the Village defendants argue that plaintiffs "failed to sufficiently allege the existence of a municipal policy, custom, or practice that proximately caused the constitutional violation alleged [in the complaint]." Motion at 4. Instead, defendants argue, plaintiffs' complaint "contains merely boilerplate allegations, which are insufficient to state a claim for liability against the Village of Darien." *Id.* The court does not agree.

In their amended complaint, plaintiffs allege that Officer White "infringed upon and deprived [plaintiffs] of [their] constitutionally protected rights of privacy and [their] liberty interest in bodily integrity, in violation of [their] rights under the due process clause, and in violation of [their] right to be free from unreasonable searches and seizures" all under color of state law. Amended Complaint at ¶¶ 9–10. They set out the facts which gave rise to the alleged constitutional deprivations with specificity. *Id.* at ¶¶ 1–8. Plaintiffs further allege that, on numerous occasions, Officer White engaged in acts of abuse and sexual misconduct similar to those involving plaintiffs Carney and Benson. Amended Complaint at ¶ 11. In particular, plaintiffs allege that, in 1984, Officer White offered to drop or void a traffic citation issued to Michael M. Rowe in exchange for sexual acts. *Id.* Further, plaintiffs allege that, for several years prior to July 4, 1985, Officer White, while acting as a police officer for the Village of Darien, regularly engaged in acts of misconduct including but not limited to, verbally and physically abusing citizens, illegally displaying and discharging firearms, and continuous fraternization with minors while on duty with no official business involved. *Id.* at ¶ 13.

With respect to the Village defendants, plaintiffs' amended complaint alleges the following: (1) for several years prior to July 4, 1985, the Village Officials were aware that Officer White engaged in this type of conduct, and yet they took no action to investigate whether Officer White was fit to act as a police officer for the Village of Darien, and allowed him to remain in his position without supervision; (2) even after July 4, 1985, the Village Officials continued to allow Officer White to act in his official capacity without supervision; (3) such deliberate indifference by the Village Officials resulted in a Village custom and de facto policy of failing to receive, investigate or act on citizen complaints of physical and sexual misconduct and abusive behavior by Officer White; (4) the Village Officials, by means of official decisions, policies, customs, acts and edicts, failed to adequately supervise and instruct Officer White in the performance of his official duties as a Darien police officer, or to investigate the aforestated unexplained voided tickets or complaints, or take any remedial steps

to properly act upon them; (5) that these acts and omissions of the Village Officials amounted to a deliberate indifference and disregard for the constitutionally protected rights of citizens with whom Officer White would come in contact in the course of his employment as a Darien police officer, and the acts of the Village Officials constituted a tacit authorization of constitutionally offensive acts such as those involving Carney. Amended Complaint at ¶¶ 14–20, 22–23, 25–26. Finally, plaintiffs allege that the Village Officials' "acts or omissions proximately caused [plaintiffs'] constitutionally protected rights to be violated in that, had the Village Officials taken any remedial steps to properly act upon the complaints or voided tickets, investigate them and supervise Officer White, he would not have been given free reign to continually engage in unconstitutional conduct and would have been terminated and prosecuted prior to July 4, 1985." *Id.* at ¶ 28.

Clearly, under *Monell* and the cases decided thereafter, the Village defendants must be held liable under § 1983 if the fact finder determines that its procedures allowed Officer White to remain in his capacity as a police officer for the Village of Darien, and thereby enabled him to abuse his position to deprive plaintiffs of their constitutional rights. Given the allegations contained in plaintiffs' complaint—in particular the specific allegations surrounding plaintiffs' arrest and those involving Michael Rowe, and the more broadly asserted allegations of numerous other complaints filed against Officer White—such a conclusion would be entirely permissible. Accordingly, the court will deny defendants' motion to dismiss for failure to state a claim for relief.

## II. Summary Judgment Motions

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The movant has the burden of showing that there is no genuine issue of fact, but ... [under Rule 56(e), the nonmoving party] must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. at 2514. "[T]here can be 'no genuine issue as to any material fact'" where the party who bears the burden of proof fails to establish an essential element in its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 56(c)).

*Brookins v. Kolb*, 990 F.2d 308, 312 (7th Cir.1993). In deciding a motion for summary judgment, the court must view the factual record, and all inferences reasonably drawn from it, in the light most favorable to the party opposing the motion. *Id.* (citing *Prince v. Zazove*, 959 F.2d 1395, 1398 (7th Cir.1992)); *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990); *Holland v. Jefferson National Life Insurance Co.*, 883 F.2d 1307, 1312 (7th Cir.1989).

As noted above, defendants have filed three summary judgment motions. In their first motion, filed May 27, 1992, the Village defendants and EMCC seek summary judgment on the issue of Tower/GRE Corp.'s duty to defend under the liability insurance policies issued by Tower to the Village. In the second, filed September 3, 1992, defendants seek dismissal of plaintiffs' complaint for failure to state a claim for which relief may be granted pursuant to 42 U.S.C. § 1983. In their third motion, defendants ask the court to dismiss defendant Donald Hoppe from the action. The court will address each of these motions separately.

### A. Motion For Summary Judgment On The Issue Of Coverage

As noted above, Employers Mutual Casualty Company ("EMCC"), and Tower Insurance Company, Inc. ("Tower"), are named as

defendants in this action. In their complaint, plaintiffs allege that these defendants are liable for any award entered against the Village of Darien and its employees pursuant to insurance policies issued by these defendants to the Village, which were in full force and effect when Officer White committed the constitutional deprivations alleged in plaintiffs' complaint. EMCC filed a cross-claim against Tower alleging that Tower is obligated to defend and indemnify defendants for the losses or damages claimed by plaintiffs. Tower denied that its policy provides coverage for plaintiffs' claims, raising as an affirmative defense that its policy does not afford liability insurance coverage for: (1) bodily injury or property damage expected or intended from the standpoint of the insured; (2) personal injury which arises out of the willful violation of a penal statute or ordinance committed by or with knowledge or consent of any insured; and (3) acts and omissions of defendants which were deliberate, willful, intentional and in violation of a penal statute.

On May 27, 1992, the Village defendants and EMCC filed a motion for summary judgment asking the court to declare that Tower, has a duty to defend and indemnify the Village of Darien and its employees in this action. In response, Tower/GRE Corp. filed a cross-motion for summary judgment asking the court to declare that the policies issued by Tower to the Village of Darien do not cover the allegations in plaintiffs' complaint and to declare that Tower/GRE Corp. does not have a duty to defend and indemnify the Village and its employees in this action.

Defendants claim coverage under two insurance policies issued by Tower to the Village of Darien—"Special Multi–Peril" policy number MP7–20811, and "Commercial Umbrella" policy number U–138537, issued on June 23, 1985 for an initial coverage period of twelve months. The parties apparently agree that both of these policies were in full force and effect when Officer White committed the constitutional deprivations alleged in plaintiffs' complaint. Neither side raises material issues of fact; they simply advance two different interpretations of the terms of the insurance policies issued by Tower to the Village—the Village defendants argue that the terms of the policies can and should be construed to cover the allegations raised in plaintiffs' complaint; Tower/GRE Corp. argues that the policies clearly exclude from coverage claims such as those raised by plaintiffs.

■ The interpretation of language in an insurance policy is a question of law properly decided by the court on summary judgment. *Pfeifer v. Sentry Ins.*, 745 F.Supp. 1434, 1438 (E.D.Wis.1990) (citing *Continental Casualty Company v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir.1985)); *School District of Shorewood v. Wausau Insurance Companies et al.*, 170 Wis.2d 347, ——, 488 N.W.2d 82, 87 (1992) (citing *Just v. Land Reclamation, Ltd.*, 155 Wis.2d 737, 744, 456 N.W.2d 570 (1990)).

■ Under Wisconsin law, an insurer is obligated to assume the defense of its insured when the complaint alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy. *Pfeifer*, 745 F.Supp. at 1439 (citing *Grieb v. Citizens Casualty Company of New York*, 33 Wis.2d 552, 557, 148 N.W.2d 103, 106 (1967)). *See also School District of Shorewood*, 170 Wis.2d 347, 488 N.W.2d 82, 87 (citing *Sola Basic Industries, Inc. v. U.S. Fidelity & Guaranty Co.*, 90 Wis.2d 641, 646, 280 N.W.2d 211 (1979); *Grieb v. Citizens Casualty Co.*, 33 Wis.2d 552, 557–58, 148 N.W.2d 103 (1967)) ("An insurer's duty to defend an insured in a third-party suit is predicated on the allegations of the complaint which, if proved would give rise to recovery under the terms and conditions of the insurance policy."). The duty to defend depends on the nature of the claim alleged in the complaint, not on the merits of the claim, because the insurance carrier typically agrees to defend even if the allegations in the suit are "groundless, false or fraudulent." [3] *Shore-*

---

**3.** The SMP policy issued by Tower to the Village of Darien does, in fact, expressly provide that "the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property

*wood,* 488 N.W.2d at 87 (citing *Grieb,* 33 Wis.2d at 558, 148 N.W.2d 103).

An insurer has a duty to defend when the complaint alleges a cause of action which falls within the scope of coverage provided by the policy issued. *Grieb,* 33 Wis.2d at 557, 148 N.W.2d 103. Thus, to determine whether coverage exists, the court must compare the complaint with the insurance policies and determine whether, if the allegations in the complaint are proved, the insurance carriers would be required to pay the resulting judgment. In Wisconsin, an insurer has the burden of proving the applicability of an insurance contract's exclusion. *Pfeifer,* 745 F.Supp. at 1439 (citing *Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 771, 157 Wis.2d 507, 456 N.W.2d 570, 584 (1990)). "If there is any doubt about the duty to defend, the doubt must be resolved in favor of the insured." *Id.* (citing *Sola,* 90 Wis.2d at 646–47, 280 N.W.2d 211).

As noted above, EMCC and the Village defendants claim coverage under the Special Multi–Peril ("SMP") policy and the Commercial Umbrella ("CU") policy. In order to determine whether plaintiffs' claims are covered under those policies, the court must look to the provisions of the policies themselves. With respect to the grant of coverage and the insurer's duty to defend, the SMP policy provided as follows:

I. Coverage—Bodily Injury and Property Damage Liability.

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit

damage, even if any of the allegations of the suit

of the Company's liability has been exhausted by payment of judgments or settlements.

\* \* \* \* \* \*

IV. Personal Injury Liability

\* \* \* \* \* \*

B. Coverage

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses:

(1) Group 1—false arrest, detention or imprisonment, or malicious prosecution;

(2) Group 2—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

(3) Group 3—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed in the conduct of the named insured's business during the policy period within the United States of America, its territories or possessions, or Canada, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgment or settlements.

Within the meaning of the SMP policy the term "damages" means "only those damages

are groundless, false or fraudulent ..."

which are payable because of personal injury arising out of an offense to which this insurance applies," and "occurrence" means "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The SMP policy specifically states that the Personal Injury Liability insurance does not apply "to personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured...."

The Commercial Umbrella policy provides, in relevant part, as follows:

I. COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;

B. PROPERTY DAMAGE, as hereinafter defined;

C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined;

to which this policy applies caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

\* \* \* \* \* \*

IV. DEFENSE—SETTLEMENT

A. With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Item 6 hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 4 of the Declarations, the Company shall:

1. defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such a suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation or settlement of any claim or suit as it deems expedient.

\* \* \* \* \* \*

B. When an underlying insurance, whether or not listed in Item 6, does apply to an OCCURRENCE, the company shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance....

The CU policy defines "occurrence" to mean "an accident or event including continuous exposure to conditions, which results, during the policy period in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED." "Personal injury" means "(1) bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, mental anguish and mental injury, (2) false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution. (3) libel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities, which occurs during the policy period."

Also included in the CU policy is a "municipality endorsement" which provides, in relevant part, as follows:

(B) It is further agreed that this policy shall not apply to any liability, unless such liability is covered by underlying insurance as described in the schedule of underlying insurance, arising out of:

\* \* \* \* \* \*

(2) Personal Injury Liability as defined below:

Personal Injury means:

(A) bodily injury, sickness or disease, including death and care and loss of services resulting therefrom, disability, mental anguish or mental injury,

(B) false arrest, false imprisonment, wrongful detention, malicious prosecution,

(C) libel, slander, defamation of character or invasion of right of privacy,

except that for which coverage is afforded under advertising liability,

(D) wrongful entry, wrongful eviction or other invasion of right of private occupance,

(E) discrimination or humiliation,

(F) assault and battery not committed by or at the direction of the insured unless committed for the purpose of preventing or eliminating danger to persons or property.

\* \* \* \* \* \*

(6) Any liability of the insured, or of any other personal or organization for whose negligent acts, errors or omission the insured is legally responsible, arising out of any actual or alleged act, error or omission arising out of the discharge of duties as a municipality or public entity or duly elected or appointed members or officials thereof;

(7) Personal injury or property damage arising out of any act of, or failure to act by, or any error, omission or mistake committed or alleged to have been committed by, any police officer, law enforcement agent or member of any law enforcement agency governed, controlled by, or under the named insured.

These provisions make clear that the policies issued by Tower to the Village of Darien cover only those personal injuries that are neither expected nor intended by the insured; personal injury intended by the insured is expressly excluded from coverage. Also excluded from coverage are personal injuries arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.

Plaintiffs' amended complaint alleges liability on the part of the Village of Darien and its officials for: (1) failure to properly supervise Officer White in the performance of his official duties as a Darien police officer; (2) failure to properly investigate or act upon the numerous complaints received against Officer White; (3) failure to investigate Officer White's misconduct, specifically his regular voiding of traffic citations in exchange for sexual acts and other improper reasons without providing proper documentation or reasons; (4) implementing a custom and de facto policy of failing to receive, investigate or act on citizen complaints of physical and sexual misconduct and abusive behavior by Officer White; (5) failure adequately to supervise and instruct Officer White in the performance of his official duties as a Darien police officer, or to investigate his unexplained voiding of tickets or the numerous complaints filed against him, or to take any remedial steps to act upon them; and (6) tacitly authorizing the constitutional deprivations committed by Officer White by failing to take any action to prevent them. Amended Complaint at 7–9. Plaintiffs seek compensatory and punitive damages, plus attorneys' fees and costs. Amended complaint at 17.

Defendants do not contend that the provisions of the SMP and CU policies are ambiguous.[4] Therefore, the court will simply apply the policies according to their terms, without engaging in construction. In the absence of an ambiguity, the court need not construe the policy strictly against the insurer. *Pfeifer*, 745 F.Supp. at 1439 (citing *Arkwright–Boston Manufacturers Mutual Insurance Company v. Wausau Paper Mills Company*, 818 F.2d 591, 594 (7th Cir.1987)). The only question is whether an issue of fact remains as to whether plaintiffs' claims against Officer White and the Village defendants fall within the exclusions of the policies.

Damage which is expected or intended from the standpoint of the insured is not an occurrence; when the insured knows or should have known of the consequences of his actions, there is no occurrence and therefore no coverage. Barry R. Ostrager and Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 8.03[b] (5th ed. 1992). If

---

**4.** Defendants do contend that the provisions are inconsistent in expressly providing coverage for personal injury caused by false arrest, detention and imprisonment, and then excluding such coverage if caused by the wilful violation of a penal statute are inconsistent. The court does not agree. This is the nature of exclusion provisions—to limit coverage provided elsewhere in the policy.

an insured knew or should have known that there was a "substantial probability" that certain results would follow from his acts or omissions, there is no "occurrence" within the meaning of a comprehensive general liability policy. *Id.* § 8.03[c] (citing *City of Carter Lake v. Aetna Casualty & Surety Co.,* 604 F.2d 1052, 1058–59 (8th Cir.1979); *Summers v. Harris,* 573 F.2d 869 (5th Cir.1978)).

In *City of Carter Lake v. Aetna Casualty & Surety Co.,* 604 F.2d at 1059 n. 4., the court defined "substantial probability" as "indications ... strong enough to alert a reasonably prudent [person] not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur." In that case, the court held that when the insured city had repeatedly been informed of sewage equipment failures leading to thè flooding of a claimant's home on several occasions, subsequent flooding incidents resulting from identical equipment failures did not constitute "accidents" or "occurrences" under the policies. Specifically, the court held that there was no accident or occurrence if the insured knew or should have known that there was a substantial probability that certain results would follow from his acts or omissions, *id.* at 1059, and that a "substantial probability" exists when there are indications sufficient to warn a reasonably prudent man "that the results are highly likely to occur." *Id.* at 1059 n. 4.

Based on a plain reading of the subject insurance policies, and in light of the applicable law, the court concludes that Tower/GRE Corp. has no duty to defend or indemnify the Village of Darien in this litigation because the allegations in plaintiffs' complaint fall outside the scope of coverage. The allegations relating to Officer White clearly speak of intentional conduct which, not only violated penal statutes, but which resulted in harm to plaintiffs Carney and Benson which was expected and intended from the standpoint of the insured. Because plaintiffs' injuries were, expected and intended from the standpoint of the insured, they were not the result of an "occurrence" and therefore are not covered. Similarly, the allegations against the Village of Darien and its officials speak of

intentional conduct which produced results expected and intended by the Village defendants—plaintiffs clearly allege that the Village defendants failed to take action despite the fact that they knew or should have known that they were allowing Officer White to commit additional constitutional deprivations. The defendant municipality in *City of Carter Lake* took a calculated risk in doing nothing after learning of the first sewage backup and equipment failure. Similarly, the Village of Darien and its officials, after learning of Officer White's propensities for verbal, physical and sexual abuse, and abuse of his position as a Village of Darien police officer, took a calculated risk that he would not repeat such offenses and did nothing to monitor or supervise his behavior. Once the Village was alerted to the problem, it could not simply ignore it and then look to its insurer to reimburse it for the liability incurred by reason of such inaction. *See City of Carter Lake,* 604 F.2d at 1059. For these reasons, the court will deny the motion for summary judgment filed by the Village defendants and EMCC on the issue of coverage, grant Tower/GRE Corp.'s motion for summary judgment, and enter a declaratory judgment of noncoverage in Tower/GRE Corp.'s favor. *See Pfeifer,* 745 F.Supp. at 1440.

**B. Motion For Summary Judgment Of Dismissal**

In their second motion for summary judgment, the Village defendants and EMCC seek dismissal of plaintiffs' complaint, arguing that plaintiffs cannot sustain a cause of action under § 1983 and that Donald White was not acting within the scope of his employment when he committed the alleged constitutional deprivations.

A § 1983 claim against an official of a municipality in his or her official capacity is treated as a claim against the municipality itself. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 105 L.Ed.2d 114 (1985). In order to establish municipal liability under § 1983, plaintiffs must prove that they suffered a deprivation of a constitutionally protected interest, and that the deprivation was caused by an official policy or custom of the municipality. *Monell,* 436 U.S.

658, 691–94, 98 S.Ct. at 2036–37; *Powe v. City of Chicago,* 664 F.2d 639, 643 (7th Cir. 1981); *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Baugh v. City of Milwaukee,* 823 F.Supp. 1452, 1459 (E.D.Wis.1993).

A municipality "may not be held liable under § 1983 for every constitutional violation caused by its policies or customs; they must be at fault (or culpable) in some sense for establishing or maintaining the policy or custom." *Jones v. City of Chicago,* 787 F.2d 200, 203 (7th Cir.1986). "At the very least there must be an 'affirmative link' between the custom at issue (especially when the custom itself does not establish wrongdoing) and the constitutional deprivation alleged to cast blame on the City." *Id.* at 204 (quoting *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)). "This is not to say that a city is absolved from fault where it takes no action. To the contrary, inaction in response to misconduct of its employees may result in municipal liability but only where the injury is caused by 'faults systemic in nature.'" *Id.* (citing *Strauss v. City of Chicago,* 760 F.2d 765, 770 (7th Cir.1985)); *Powe v. City of Chicago,* 664 F.2d 639, 651 (7th Cir.1981). "[T]he isolated act of an employee generally is not sufficient to impose municipal liability." *Id.* (citing *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037). Plaintiffs' amended complaint alleges facts which, if proved, could establish that the Village defendants implemented and followed a custom or policy which facilitated Officer White's constitutional deprivations. With respect to the Village of Darien's Board of Trustees (hereinafter the "Board"), plaintiffs state that the Board consisted of a president and six board members elected to serve two-year terms. The Board was established to administer the Village's business, overseeing expenditures and monitoring the Village's progress in various areas. Plaintiffs' opposition brief at 11 (citing Wheeler deposition at 12; Logterman deposition at 20; Obershaw deposition at 10). Defendant Wesley Hanson was a member of the Board during the years 1984 and 1985; Dean Logterman served as a member of the Board during the years 1981 through 1985; Joseph Moran served as a member of the Board during the years 1983

through 1985; Kenneth Blank served as a member of the Board in 1985; Curtis Schellhase served as a member of the Board during the years 1976 through 1980, and 1983 through 1985; Harold Mayer served as a member of the Board during the years of 1981, 1982, and 1985; Michael Obershaw served as a member of the Board during the years 1979, 1980 and 1981, and as President of the Board during the years 1983, 1984 and 1985. The Board typically held meetings on a monthly basis. In addition, the Board established three committees—a public works committee, a parks committee and a police committee—to which one or more members were assigned for the purpose of working with the various Village departments. *Id.* at 11. The police committee worked closely with the Chief of Police, meeting when the Chief thought it necessary. *Id.* at 12. At these meetings, the committee reviewed matters brought to its attention by the Chief; written minutes of each meeting were then prepared and distributed to all the of the Trustees at their next meeting. *Id.* The committee never made any independent investigations as to the operation of the police department or its procedures for processing complaints against officers. *Id.* at 13 (citing Logterman deposition at 125, 144–45; Obershaw deposition at 14; Mayer deposition at 39–41). The committee never independently reviewed the activities of the police officers or followed-up on disciplinary actions taken against police officers. *Id.*

Plaintiffs further state that Donald Hoppe served as Chief of Police for the Village of Darien from 1976, when Officer White was hired, until April 1986, when Hoppe died. As Chief, he set the policies for the police department and headed the Trustees' police committee. *Id.* at 13. In 1984 and 1985, Officer White worked the night shift, picking up the police squad car from Chief Hoppe's residence in the early evening hours and returning it at the end of his shift. *Id.* (citing deposition of Delores Hoppe at 33–34). Because of illness, Chief Hoppe was hospitalized on a regular basis throughout this time, leaving Officer White to work his shifts without supervision. *Id.* (citing Hoppe deposition at 33–34; Logerman deposition at 31–32).

Numerous complaints were filed against Officer White. Some, but not all, of these complaints were brought to the attention of the police committee; the committee merely referred them to Chief Hoppe for his review. *Id.* at 15 (citing Logterman deposition at 60–63, 132, 144; Mayer deposition at 66–67; Obershaw deposition at 59–60, 112). From the time Officer White was hired in November 1976 until July 4, 1985—the evening on which plaintiffs Carney and Benson were arrested—Officer White voided approximately 245 traffic tickets without documented reason. Nothing in Officer White's personnel file, the police committee minutes or the Trustees' meeting minutes suggests that anyone from the Board or the department ever investigated or monitored Officer White's practice of voiding tickets without explanation. *Id.* at 17. Furthermore, by April 1984, so many complaints had been filed against Officer White for conduct including, inappropriately displaying and discharging a firearm, verbal and physical abuse, etc. that he was given a written reprimand. *Id.* at 15–17. In February 1982, the police committee reviewed numerous complaints against Officer White, concluded that there was a common thread emerging concerning his conduct and advised him that they would re-evaluate his performance in three months. However, despite the fact that additional complaints were filed within that three-month period, the police committee did not conduct a follow-up evaluation or take any other action with respect to Officer White. *Id.* at 16.

On July 30, 1984, the Rowe incident occurred; Rowe filed a report with the State of Wisconsin Department of Justice. *Id.* at 18–19. In that report, dated September 14, 1984, Rowe alleged that Officer White threatened him, intimidated him, held him captive, and eventually blatantly offered to dismiss the traffic citation issued to Rowe in exchange for sexual acts. *Id.* at 19–20. The Department of Justice forwarded the report to the Walworth County District Attorney's Office which assigned the matter to the Walworth County Sheriff's Department for fur-

ther investigation. *Id.* at 20. On January 25, 1985, Sheriff Robert Pettibone of the Walworth County Sheriff's Department met with Chief Hoppe to discuss the report prepared by Rowe and the Department of Justice. *Id.* Despite the report, Chief Hoppe took no action to investigate Officer White's conduct; nor did he take any steps to determine whether Officer White was fit to continue in his capacity as a police officer with the Village of Darien. *Id.* at 20–21. Officer White was finally reprimanded on December 10, 1986 by Michael Michalek, Chief Hoppe's successor. *Id.* at 21 (citing Michalek deposition at 41–44). In August 1987, Officer White was suspended from the police force by the Village of Darien. *Id.* at 22. On September 21, 1987, the Village obtained a psychological report on Officer White which concluded that he was unfit to be a law enforcement officer. *Id.* at 22. On October 26, 1987, Officer White was terminated following disciplinary proceedings for conduct unbecoming a police officer. *Id.* at 23.

Subsequent to being terminated by the Village of Darien, Officer White applied for and obtained a position with the police department in the Town of Bloomfield.[5] Within two months of being hired by the Town of Bloomfield, Officer White forced two young males, on two separate occasions, to perform sex acts against their will during the course of traffic arrests. *Id.* at 24. Officer White was subsequently charged and convicted on these offenses and the offenses involving Michael Rowe and Paul Carney; he is currently serving a three-year prison term for the offenses involving Carney. *Id.* Officer White has admitted to committing offenses similar to those against Carney approximately six to twelve times per year during his eleven years as a police officer with the Village of Darien.

Plaintiffs concede that "a 'few complaints' from citizens that Officer White was 'rude' toward them admittedly may be insufficient to have alerted the defendants to the possibility that the 'natural consequences of Officer White's acts would be deprivation of the

**5.** Bloomfield officials were totally unaware of White's prior misconduct because the Village of Darien officials closed and concealed White's personnel file and instructed Chief Michalek not to respond to an inquiry from the Wisconsin Department of Justice's Law Enforcement Standards Bureau. Plaintiffs' opposition brief at 23.

constitutional rights' of those he came in contact with as a police officer." Plaintiffs' opposition brief at 37. However, they contend that "**actual knowledge** of the explicit details of Officer White's sexual misconduct involving Rowe and the others referred to in the DOJ–Rowe Report is sufficient." *Id.* Plaintiffs contend that they can prove that the Village officials—and consequently the Village of Darien itself—were aware of the actual constitutional deprivations committed by Officer White, but nonetheless, failed to take preventive measures. *Id.* at 40. Plaintiffs further contend that this proof of actual knowledge is the only "affirmative link" required to hold the Village of Darien liable under § 1983. *Id.* (citing *Jones v. City of Chicago,* 787 F.2d 200, 204–05 (7th Cir.1986)).

After conducting a psychological evaluation of Officer White, which included a review of White's personnel file, Dr. Keith D. Gibson noted that "[t]he number of written complaints about Officer White's attitude and relationship with citizens is unusual. Over the past two years none of the other officers working for the Village of Darien have received a written complaint. The chief of police in Lake Geneva reported that it is very rare to receive any written complaints. He reported to this examiner that he could think of only one written complaint over the past five years, and this is with a department of nineteen full time officers." Psychological evaluation of Donald White, report prepared by Dr. Keith D. Gibson on September 21, 1987 at 6.

Defendants do not contest the facts as outlined in plaintiffs' submissions. Based on this factual record, the court finds that plaintiffs' complaint does state a cause of action for municipal liability under § 1983. The factual allegations concerning conduct which occurred after July 4, 1985, the date on which Officer White committed the alleged offenses against plaintiffs Carney and Benson, are irrelevant for purposes of establishing that, on that date, the Village defendants knew or should have known that Officer White was using his position to accomplish various constitutional deprivations. However, without expressing an opinion as to their merits, these allegations do demonstrate the Village defendants' unwillingness to take action against Officer White or to prevent him from committing further constitutional deprivations. At the very least, the court finds that there is a genuine issue as to whether, on July 4, 1985, defendants knew or should have known that White had engaged in acts of misconduct including verbal and physical abuse etc. If they did, their actions—or inactions, as the case may be—would suggest that these defendants subscribed to a policy of either failing to investigate citizens' complaints against Officer White, or of investigating them in such a manner so as to enable Officer White to remain on the job, largely unsupervised.

As noted above, in addition to arguing that plaintiffs' complaint fails to state a claim for relief, the Village defendants and EMCC argue that plaintiffs' complaint cannot stand because Officer White was acting outside the scope of his employment when he committed the alleged offenses. Wisconsin statutes § 895.46 provides as follows:

> If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe **and the jury or the court finds that the defendant was acting within the scope of employment,** the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe.... Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment.

Wis.Stats.Ann. § 895.46(1)(a) (West Supp. 1993) (emphasis added).

To be found to have acted within the scope of employment, an employee must have been motivated, at least in part, by a

purpose to serve his employer. *Olson v. Connerly*, 156 Wis.2d 488, 499, 457 N.W.2d 479 (1990). Serving the employer need not be the employee's only purpose; it need not even be the employee's primary purpose. *Id.* Whether an employee was acting within the scope of his employment is a material issue of fact to be determined by the trier of fact. *Desotelle v. Continental Casualty Co.*, 136 Wis.2d 13, 27, 400 N.W.2d 524 (Wis.Ct. App.1986); *Cameron v. City of Milwaukee*, 102 Wis.2d 448, 459–60, 307 N.W.2d 164 (1981).

 Plaintiffs argue that the Village of Darien is liable for any judgment entered against Officer White because he was acting within the scope of his employment when he deprived plaintiffs of their constitutional rights—Officer White, while in full uniform, on duty and driving the Village of Darien's squad car, effected a traffic stop on the vehicle in which plaintiffs were travelling and arrested them for having open containers in their vehicle; he held plaintiffs in custody either in his squad car or in the Village of Darien police station for several hours incident to the arrests for open intoxicants; he made arrangements for plaintiffs to be processed and jailed in the Village; he used the voiding of the traffic citations and open container charges to induce plaintiffs to perform sexual acts, and promised harsh treatment and even sexual abuse from the other jail inmates if they refused to comply with his requests; and, after sexually assaulting Carney, Officer White ultimately voided the citations and dismissed the charges against plaintiffs.

Plaintiffs argue that Officer White was able to accomplish these things because of his position as a Village of Darien police officer and the attendant power such a position carries.

Defendants argue that White was acting outside the scope of his employment; White's actions were wholly disconnected from his duties as a police officer with the Village of Darien, and under no circumstances can his actions be interpreted as a method of carrying out an objective of his employment. Therefore, defendants argue, the Village is not required to provide indemnification for

his actions under § 895.45(1)(a). The court need not conclusively find at this stage of the proceedings that Officer White was acting within the scope of his employment when he deprived plaintiffs of their constitutional rights; it is sufficient to note that plaintiffs have put forth enough evidence to establish that, at the very least, there is a genuine dispute as to this issue.

### C. Motion For Summary Judgment Of Dismissal Filed On Behalf Of Donald Hoppe

On September 3, 1992, defendants filed a motion for summary judgment of dismissal on behalf of Donald Hoppe. In this motion, defendants argue that, because Hoppe died on March 8, 1986 and was therefore deceased on June 26, 1991—the date plaintiffs initiated this action, the court lacks jurisdiction over his person. In support of their motion, defendants cite Federal Rule of Civil Procedure 17(b), which provides that "the capacity of an individual, other than one acting in a representative capacity, to sue and be sued shall be determined by the law of the individual's domicile"—which, in the case of Donald Hoppe, is Wisconsin. Because under Wisconsin law "one deceased cannot be a party to an action," *Brickley v. Neuling*, 256 Wis. 334, 336, 41 N.W.2d 284 (1950), defendants argue that Hoppe should be dismissed.

 In opposition to this motion, plaintiffs argue that Donald Hoppe was named, not as an individual, but in his official capacity as Chief of Police for the Village of Darien. Further, plaintiffs argue that defendants, having accepted service of process on Chief Hoppe's behalf, and having filed answers to the initial and first-amended complaints, as well as numerous other pleadings in this action on Chief Hoppe's behalf, without counsel entering a special appearance or otherwise reserving the right to challenge the court's jurisdiction over Chief Hoppe, have waived the right to do so now.

With respect to plaintiffs' waiver argument, the court finds significant the Seventh Circuit's recent decision in *Continental Bank, N.A. v. Andrew C. Meyer*, 10 F.3d 1293, 1296–97 (7th Cir. Dec. 1, 1993):

Federal Rule of Civil Procedure 12(h)(1) provides that "[a] defense of lack of jurisdiction over the person ... is waived ... if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." The defendants did raise the defense in their answer, and therefore the waiver provided for by Rule 12(h) did not occur. *See Adden v. Middlebrooks,* 688 F.2d 1147, 1156–57 (7th Cir.1982). However, the privileged defenses referred to in Rule 12(h)(1) "may be waived by 'formal submission in a cause, or by submission through conduct.'" *Trustees of Central Laborers' Welfare Fund v. Lowery,* 924 F.2d 731, 732 (7th Cir.1991) (quoting *Marcial Ucin, S.A. v. SS Galicia,* 723 F.2d 994, 996–97 (1st Cir.1983)); *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939); *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir.1990).... Indeed, "[a] party need not actually file an answer or motion before waiver is found." *Central Laborers' Welfare Fund,* 924 F.2d at 732–33; *O'Brien v. Sage Group, Inc.,* 141 F.R.D. 81, 83 (N.D.Ill.1992), judgment aff'd, 998 F.2d 1394 ([7th Cir.] 1993).

Here, the defendants fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction. They participated in lengthy discovery, filed various motions and opposed a number of motions filed by the bank. While the defendants literally complied with Rule 12(h), "they did not comply with the spirit of the rule, which is 'to expedite and simplify proceedings in the Federal Courts.'" *Yeldell,* 913 F.2d at 539 (quoting C. Wright & A. Miller, 5A *Federal Practice and Procedure* § 1342, at 162 (2d ed. 1990)). *Continental Bank,* 10 F.3d at 1297 No. 91–3476, slip op. at 5–6. Having filed two answers and numerous motions on behalf of Chief Hoppe, defendants may not now raise a defense of lack of personal jurisdiction.

■ Having determined that defendants have waived the right to challenge personal jurisdiction, the court need not reach the merits of defendants' motion. Nonetheless, the court notes that, if such a defense were available, the court would deny defendants' motion because plaintiffs' complaint names Donald Hoppe in his official capacity as Chief of Police.

Personal capacity suits seek to impose personal liability upon a government official for actions taken under color of state law. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). Official capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon [v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985)].

Plaintiffs' complaint alleges, in relevant part, that "[d]efendant, DONALD HOPPE ("Hoppe"), at all relevant times referred to herein, was an individual and resident of the State of Wisconsin and at all relevant times referred to herein, was the Village of Darien Police Chief. Hoppe is now deceased." Amended complaint at ¶ 5. In Counts II and V, which assert liability under § 1983 on the part of the Village of Darien, plaintiffs allege wrongful conduct on the part of the "Village Officials"—a group defined in the complaint to include "[t]he Village of Darien Police Chief, Village President and Village Trustees." *Id.* at ¶ 8. Further, plaintiffs allege that "[e]ach of the aforestated acts of Officer White and the Village Officials was performed as agents of the Village of Darien and under color of state law." *Id.* ¶ 27.

Based on these allegations, the court finds that plaintiffs' complaint named Donald Hoppe in his capacity as Chief of Police for the Village of Darien, and not, as defendants argue, in his individual capacity. Because a suit against a municipal official in his official capacity is, in reality, a suit against the municipality, the court concludes that defendants are not entitled to summary judgment

of dismissal as to Mr. Hoppe by virtue of the fact that he is now deceased.

## III. Conclusion

For the reasons set forth above, the court finds that defendants' have failed to demonstrate that plaintiffs' complaint fails to state a claim for relief. Accordingly, defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be denied. Similarly, the court finds that defendants are not entitled to summary judgment of dismissal. The court finds that plaintiffs' complaint adequately states a claim for relief under § 1983 against the Village of Darien, and, at the very least, there is a genuine issue as to whether Officer White was acting within the scope of employment when he committed the constitutional deprivations described in plaintiffs' complaint.

With respect to the issue of coverage, the court finds that the allegations raised in plaintiffs' complaint fall outside the scope of coverage provided by the insurance policies issued to the Village of Darien by Tower. The court therefore concludes that Tower/GRE Corp. does not have a duty to defend and indemnify the Village defendants in this action.

Finally, the court finds defendants have waived the right to challenge the court's exercise of personal jurisdiction over Donald Hoppe. Alternatively, the court finds that plaintiffs' complaint named Donald Hoppe in his official capacity as Chief of Police for the Village of Darien at the time of the alleged offenses. For these reasons, the court will deny the motion for summary judgment of dismissal filed by defendants on behalf of the late Donald Hoppe; the action is properly styled as one against the Village, and does not abate because of Hoppe's death. Therefore,

**IT IS ORDERED** that the motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the Village defendants and EMCC be and the same is hereby **DENIED;** and,

**IT IS FURTHER ORDERED** that the motion for summary judgment of dismissal on the grounds that plaintiffs' complaint fails to state a claim for relief and because Officer White was acting outside the scope of his employment when he committed the offenses against plaintiffs, filed by the Village defendants and EMCC be and the same is hereby **DENIED;** and,

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by the Village defendants and EMCC, seeking a declaratory judgment on the issue of coverage be and the same is hereby **DENIED;** and that defendant Tower/GRE Corp.'s motion for summary judgment on this issue be and the same is hereby **GRANTED;** and

**IT IS FURTHER ORDERED** that the motion for summary judgment of dismissal as to defendant Donald Hoppe filed by the Village defendants and EMCC be and the same is hereby **DENIED.**

The clerk is directed to enter a declaratory judgment of noncoverage in Tower/GRE Corp.'s favor.